## D. E. Kennedy v. Wm. R. Baker.

(Case No. 1235.)

1. **Trust and trustees.**— If the trustee convey the estate by breach of trust, the *cestui que trust* may follow it into the hands of a volunteer, whether he had notice or not.

2. **Trusts — Statute of limitations.**— To remove a trust from the operation of the statute of limitations, it must be such a trust technically as is created by the mutual confidence of the parties, and such as equity can alone take cognizance of, and redress. If the trust be such a one as that courts of common law can give relief, the statute will run, even though the party may seek his relief in a court of equity; citing and following Wingate *v.* Wingate, 11 Tex., 433, and Tinnen *v.* Mebane, 10 Tex., 252.

3. **Trusts — Limitation.**— A trust raised by implication of law is within the statute of limitations.

4. **Limitation — Fraud.**— Fraud will only prevent the running of the statute of limitation until the fraud is discovered or by the use of reasonable diligence might have been discovered; citing and following Kuhlman *v.* Baker, 50 Tex., 630; Alston *v.* Richardson, 51 Tex., 1, and Bremond *v.* McLean, 45 Tex., 11.

5. **Trusts.**— If the trustee invests the trust fund in other property, the trustee may follow the fund into the new investment, so long as he can identify the purchase as one made with the trust fund or its proceeds, although the trustee may have taken the title in his own·name, or in the name of any other person with notice of the facts.

6. **Fact case.**— See opinion for an exhaustive discussion of the principles above announced; and see statement of case and opinion for facts creating·a trust, under which it was not relieved from the operation of the statute of limitations.

Appeal from Harris. Tried below before the Hon. James Masterson.

This cause was before the· supreme court before on the appeal of the defendant W. R. Baker, when the judgment was reversed and the cause remanded. The case will be found reported in 53 Tex., 200, to which reference is made for a statement up to that time.

The suit was brought October 31, 1879; the record begins with the plaintiff's second amended petition, filed March 31, 1880, and it does not recite what were the contents of the plaintiff's original and first amended petitions.

The plaintiff alleged substantially the same leading facts as were stated in the original and first amended petitions; but the relief sought was variant from that asked on the previous trial.

The plaintiff prayed for judgment for $2,417.50, with interest from September 20, 1877, at the rate of seven per cent. per annum; and if not entitled to that relief, that he might have judgment for that amount for money, and for general relief, "and special relief and judgment for all moneys or property that this case may warrant."

This amended petition in the record apparently varied from the plaintiff's original and second amended petition with reference to the changed character of the suit, so as to conform the allegations to such remedy for money instead of bonds, as the opinion of the supreme court indicated the plaintiff might be entitled to, if any. Among such changes in the plaintiff's averments, were that which alleges that the Houston & Texas Central Railway Company, " on the 20th day of March, 1877, for the purpose of relieving itself of all further responsibility on account of the trust fund and all liability as trustee for the owner thereof, induced William R. Baker to accept said trust fund for the benefit of the owner thereof, and then and there executed its promissory note in the name of Baker as payee, for the sum of $2,417.18, payable six months after its date (that being the amount of said fund with interest added to maturity of the note). That Baker accepted the trust fund, not intending at that time to appropriate the same to his own use, but in good faith, for the purpose of holding the same for the proper owner." The petition alleged the exchange made of the note, together with defendant's personal assets, by the defendant with the railway company for one hundred bonds of $1,000 denomination each; which transaction was consummated before the maturity of the note. Also that Shirley ratified the conversion of his money into the bonds, and all the acts of the railway company and Baker in the premises, by claiming his trust fund in Baker's hands. Alleging that he demanded of the latter his interest in the bonds, or in lieu thereof, its value in money; that at the time of the demand, " Baker admitted that he held for the owner of the trust fund something over the sum of $2,700 in bonds, but claimed that he ought to be indemnified by Shirley against all loss that he might suffer from a judgment rendered in the district court of Harris county, in favor of W. T. Wasson, against him and Shirley jointly, and for that reason refused to deliver to Shirley either the amount of the trust fund in money or bonds." It was further alleged that since the institution of this suit, the judgment above referred to had been reversed by the supreme court, and that Baker was thereby released from liability on the same; that Baker still refused to deliver to plaintiff (the assignee of Shirley) the trust property or trust fund, either in kind or in money.

Defendant filed an amended original answer, comprising a general demurrer, special exception, general denial, plea of the statute of limitations of two years, and a plea of offset.

Judgment was rendered for the plaintiff for $1,312.40.

Both plaintiff and defendant filed motions for a new trial, which were overruled; each gave notice of and perfected their appeals, and errors are assigned by each.

Baker relied only on the two following assignments of error:

1st. The court erred in not sustaining defendant's plea of limitation, and in rendering judgment for plaintiff, when the facts clearly show that if plaintiff ever had any cause of action against defendant it was barred by the statute of limitations of two years.

2d. The court erred in rendering judgment for the plaintiff, because the evidence shows conclusively that he had no cause of action against defendant.

The appellant Kennedy assigned the following grounds of error, viz.:

1st. The court erred in rendering judgment for plaintiff for only $1,312.40, when the whole evidence adduced upon the trial showed that plaintiff was entitled to the sum of $2,858.03.

2d The court erred in valuing the note for $2,417.18 of the Houston & Texas Central Railway Company, delivered to the defendant in settlement of the trust fund sued for, at fifty per cent. discount, and in rendering judgment accordingly, there being no evidence of the insolvency of said company, or proof to show that the market value of said note was less than par; or that the bonds for which said note was exchanged by defendant were worth less than par when this suit was instituted, or on the 8th day of August, 1879, when the same was demanded.

3d. The court erred in refusing to give judgment for plaintiff for the face value of the note of said railway company, obtained by the defendant from said Central Railway Company in settlement of said trust fund sued for (or the face value of said bonds received by defendant for said note), with interest on same from the 20th day of September, 1877 (when said note matured), at the rate of seven per cent. per annum up to the date of judgment, herein rendered on the 28th day of April, 1880, to wit, $2,858.03, and eight per cent. per annum interest thereon from that date until paid.

4th. The court erred in overruling plaintiff's motion for a new trial.

E. P. Hill, for appellant, cited Tinnen v. Mebane, 10 Tex., 246; Wingate v. Wingate, 11 Tex., 430; Hunter v. Hubbard, 26 Tex., 547; Lumpkin v. Murrell, 46 Tex., 58, 59; Mitchell v. McLemore, 9 Tex., 151; Wood v. Carpenter, 11 Otto, 135.

*A. R. Masterson,* also for appellant, cited Wethered *v.* Boon, 17 Tex., 146–7; Merriman *v.* Russell, 39 Tex., 285; Wheat *v.* Owens, 15 Tex., 242; Perry on Trusts, secs. 217, 241, 835; Story's Equity, sec. 533; Pars. on Con., vol. 1, p. 123; 4 Kent, p. 336; Stampers *v.* Johnson, 3 Tex., 3, 4; Carter *v.* Carter, 5 Tex., 99–101; Mead *v.* Randolph, 8 Tex., 196–7; Dunham *v.* Chatham, 21 Tex., 246–7; Leakey *v.* Gunter, 25 Tex., 403; Reeves *v.* Bass, 39 Tex., 632–3; Smith *v.* Sublett, 28 Tex., 169, 170; Story's Equity, sec. 533.

No briefs for appellee on file.

WALKER, P. J. COM. APP.— We are clearly of the opinion that the plaintiff's cause of action, as shown under the pleading and evidence, was barred by the statute of limitations at the time he instituted his suit. More than two years had elapsed at that time since the date of the note given by the railway company to the defendant for the trust deposit made by White for the benefit of Shirley. The note was executed and delivered, according to the evidence, before its maturity. The note was dated March 20, 1877, payable at six months, and it was by the defendant converted into bonds in the transaction he had with the railway company in the month of July, 1877, when he acquired from the company certificates for the one hundred bonds of $1,000 each, and which, at a later date, the company took up, and the contemplated bonds were delivered to the defendants as provided for by the certificates. The cause of action accrued to Shirley as soon as the defendant Baker obtained possession or control of the money which belonged to Shirley. The transaction between White and the railway company through the defendant, at that time its vice-president, and the transaction subsequently between the defendant and the company, made at his request, through which he obtained the company's promissory note for the principal and interest of Shirley's money, constituted an effectual conversion of the deposit by the act of the defendant into assets of Baker, which the railway company held in the capacity of debtor to Baker. This conversion constituted Baker, by operation of law, a trustee. The trust was not an express trust; the trust was not created by a contract whereby he assumed the position and relation of trustee, but the law imposed upon him the obligations which had attached to the railway company as trustee of the fund, for the benefit of Shirley.

The statute of limitations commenced to run against Shirley as soon as his right accrued to demand from Baker the money which

he had received from the railway company. When Baker recognized the money as being within his possession and control (which he did do by taking the note of the company for the same, with interest), he became subject, *eo instanti*, to Shirley's right to demand and receive the same from him. Consequently the statute of limitations began then to run, and when suit was brought by Kennedy on the 31st day of October, 1879, the bar of two years had become complete.

Against this view of the subject, the plaintiff interposes the objection that if the relation between Shirley and Baker was that of *cestui que trust* and trustee, the latter could not invoke such a defense except by his having repudiated such trust relation, and having held the fund adversely to Shirley, claiming the money absolutely as his own. This proposition has no proper application to this case; the nature of the trust with which Baker was affected in this transaction does not pertain to that kind of trust to which the above rule of law relates. See Wingate *v.* Wingate, 11 Tex., 433; Tinnen *v.* Mebane, 10 Tex., 252.

"The doctrines of trusts are equally applicable to real and personal estate, and the same rules will govern trusts in both kinds of property." Perry on Trusts, sec. 16.

This trust was a resulting trust; the transaction was such that the courts will presume that the defendant, under the facts of the case, intended to hold the money of Shirley on the same terms as the railway company engaged to do when it received it from White. That company received the money on the conditions specified in the receipt of Baker, its vice-president, dated December, 1873, as follows:

" Office of the Houston & Texas Central Railway Company.

" Henry K. White has deposited with the Houston & Texas Central Railway Company $1,500 in gold, subject to the order of W. B. Wasson, or whom it may concern, being the amount of money deposited with him by Thomas M. Shirley to pay said Shirley's draft in favor of W. B. Wasson, which Wasson has not called for.

(Signed)     " W. R. Baker,<br>" Vice-President."

The evidence shows that the money thus deposited was not for the benefit, use or control of White, but for the benefit of Shirley, and that the latter adopted and confirmed the action of White in the premises, and that the railway company accepted and recognized the transaction as being of that character.

It was a breach of the trust for the railway company to pay the

money to Baker on his request.   Baker obtained it without consid-°eration, and whether he had had notice or not of Shirley's equities and rights, he would be constituted a trustee for Shirley.   "If the trustees convey the estate by a breach of the trust, the' *cestui que trust* may follow the estate into the hands of a volunteer, whether he had notice or not; and into the hands of a purchaser for value, if he had notice of the trust. . . .   The purchaser under such circumstances becomes a trustee, and liable in the same manner as the person from whom he purchased; for knowing another's rights to the property, he throws away his money.   Even trover may be maintained against a purchaser in breach of the trust with full knowledge of the trust.   And this applies not only to direct or express trusts, but also to constructive trusts, equitable incumbrances and liens for the purchase money."   2 Perry on Trusts, sec. 828, and authorities there cited.

Baker had full knowledge of all the facts when the railway company received the money, and thenceforth throughout; but that fact is not, it seems, required to exist in order to affect his liability as a trustee.   "A mere *volunteer*, or person who takes the property without paying a valuable consideration, will hold it charged with all the trusts to which it is subject, whether he have notice or not; for in such case no wrong or pecuniary loss can fall upon him in compelling him to execute the trust to which the property that came to him without consideration was subject."   1 Perry on Trusts, sec. 217.

It is obvious that Baker is chargeable as a trustee, and that the trust is a constructive trust.   The character of the trust is one, however, that is within the operation of the statute of limitations.

In Wingate v. Wingate, 11 Tex., 433, Justice Lipscomb said: "But it does not follow that every kind of trust forms an exception to the operation of the statute of limitations; if so, half the business transactions of men would be removed from its influence.   And the doctrine has been settled by a train of decisions, from the case of Lackey v. Lackey, Prec. in Ch., 518, decided by Lord Macclesfield, down to the present time, that, to remove a trust from the operation of the statute, it must be such a trust, technically, as is created by the mutual confidence of the parties, such as equity alone can take cognizance of and afford redress.   If it is a trust that common law courts could give relief, the statute will run, although the party may have sought his relief in chancery.   In such cases, the fact of the suit being brought in the court of chancery will not defeat the statute; it can be avoided only by a technical trust of which the

courts of common law could afford no relief. When it is laid down that, so long as a trust is continuing and subsisting, the statute does not commence to run between the *cestui que trust* or his assigns and their trustee, the doctrine applies to such cases only as are strictly and technically trusts, created and sustained by the principles of equitable jurisprudence, exclusive of, and in contradistinction to trusts of common law cognizance; and even in such cases the statute would commence to run from the time the trustee disavowed the trust, or did any act conclusively showing that he did not hold as trustee."

In Tinnen v. Mebane, 10 Tex., 252, it is laid down by Chief Justice Hemphill that "all trusts which are cognizable at law are not withdrawn from the operation of the statute. Persons who receive money to be paid to another, or who misapply money placed in their hands for a particular purpose; the reciprocal rights and duties founded upon the various species of bailments, as between hirer and letter to hire, borrower and lender, depositary and persons depositing, etc., are cases of express and direct trust, but, being cognizable at law, are within the reach of the statute. . . . All implied and constructive trusts, all which are cognizable at law, are subject to the bar of limitation; and equity applies the same limitation to equitable demands that is applied in analogous cases at law. It is only where the trust is the mere creature of equity — exclusively cognizable within that jurisdiction, and is a subsisting, continued and acknowledged trust, that the statute has no operation."

The rules of law thus elaborately and clearly laid down by our supreme court in the two cases quoted from, place it beyond question that the statute of limitation commenced to run against Shirley, certainly, from the period at which Baker became chargeable as a trustee, by implication, of the fund. His wrongful and unauthorized acquisition of the money subjected him to an action at law for the money without the necessity of a previous demand for it by Shirley. "Trover may be maintained against a purchaser in breach of the trust with full knowledge of the trust." Kitchen v. Bradford, 13 Wall., 416. And without regard to the form of the action, or of distinctions as to equity or law jurisdiction of the court in which the remedy might be pursued, it has been seen that trusts of this character do not belong to the kind of trusts against which the statute does not under ordinary circumstances begin to run.

The doctrines on this subject as laid down by our own court are maintained also in other states of the Union, and the application which is made of them seems to be consistently regardless of

whether the case arises in a court of chancery or a court of law in those states where, unlike our system, separate jurisdictions are maintained in respect to law and equity. " While the statute of limitations may have no application to a technical and continuing trust, which is subject to inquiry in a court of equity only, and the question arises between the trustee and the *cestui que trust*, yet it does apply to a trust in respect to which there is a remedy at law." The Governor v. Woodworth, 63 Ill., 254; 7 Wait's Actions & Def., p. 269, citing above and other authorities.

" It has been repeatedly held that a trust raised by implication of law is within the operation of the statute of limitations." 7 Wait's Actions & Def., p. 269, citing Manion v. Titsworth, 18 B. Mon. (Ky.), 532; Walker v. Walker, 16 Serg. & R., 379; Sheppards v. Turpin, 3 Gratt. (Va.), 373; Edwards v. University, 1 Dev. & Bat. (N. C.) Eq., 325; McClane v. Shepherd, 21 N. J. Eq., 76; McDowell v. Goldsmith, 6 Md., 319; Wilmerding v. Russ, 33 Conn., 67.

In cases of implied or constructive trust, where it is sought for the purpose of maintaining the remedy to force upon the defendant the character of trustee, such courts will apply the same limitation as provided for actions at law. 7 Wait's Actions & Def., p. 229, citing Beaubien v. Beaubien, 23 How. (U. S.), 190, 207; Eismendorf v. Taylor, 10 Wheat., 152–177; Sloan v. Graham, 85 Ill. See, also, Miller v. McIntyre, 6 Pet., 61; Nimmo v. Stewart, 21 Ala., 682.

This last proposition has a direct application to the merits of this case upon the facts as developed by the evidence. And where a person claiming personal property or the profits of real estate is turned into a trustee by implication, or by operation of law, the right of action by the *cestui que trust* will, as a general rule, be subject to the same limitation as a demand purely legal. See Hawley v. Cramer, 4 Cow., 717; Martin v. Bank, 31 Ala., 115; Ashwist's Appeal, 60 Pa. St., 290, which are cited by Wait in his Actions & Def., vol. 7, p. 270, to support the above proposition.

The doctrines of the law on this subject, as administered in courts of equity as well as of law, are pointedly involved, and distinctly illustrated, in an opinion of much clearness by Judge Green in the case of Haynie v. Hall's Executor, 5 Humph. (Tenn.), 290. The action was brought by bill in equity against the executor of the will of the plaintiffs' father to recover certain moneys which they alleged came into the hands of the testator in his life-time, and which belonged to them under the will of their grandfather, who had died many years ago in North Carolina. The money was received by the testator in 1805; the bill was filed in 1842. The defendant

(executor) relied on the statute of limitations as a bar to the recovery of the money. The chancellor decreed for the complainants the sum of $225, with compound interest. On the appeal of the defendant, Judge Green said: "But it is argued, and so the chancellor thought, that as regards the money legacy due the complainants from their grandfather's estate, and which it is assumed their father received in 1805, the statute of limitations does not apply; that he held the money as a trustee of such character that a court of equity will not permit him to rely on the lapse of time. The statute of limitations prescribes that certain *forms* of action shall be barred within the times limited, and, therefore, in its terms it does not apply to courts of equity; but the courts of chancery, both of Great Britain and this country, have uniformly held that in cases where any remedy exists at law, if a court of chancery gains jurisdiction of a cause, the time fixed in the statute as a bar to the action at law will also be a bar to a bill in chancery. All that class of trusts, therefore, that become such by matter of evidence, where a party takes possession in his own right, are equally subject to the operation of the statute of limitations in courts of equity, as would be the corresponding actions prosecuted in courts of law. But in express or direct trusts, created by the contract of the parties, the statute of limitations does not operate. In such cases the trustee takes possession and holds for another. His possession is the possession of that other, and there can be no adverse holding until the trustee denude himself of the trust, by assuming to hold for himself, and notifies the *cestui que trust* of his treachery. In these cases no action at law can be maintained. The remedy is only in a court of equity. The statute of limitations, therefore, has no application to them. Apply these principles to the case before us. The complainants are entitled to a sum of money in North Carolina by the will of their grandfather. Their father procures the executor of Humphrey's will (the grandfather's executor) to pay this money to him. Now, in receiving it, how does he become a direct or express trustee? He stood in no legal relation to the parties by which he was entitled to receive it, as an executor, administrator or guardian does; on the contrary, he was their self-constituted agent. He received the money by wrong, and he held it in his own right. But, having possessed himself of the money of these complainants, they had a right of action against him to recover it, and might have sued him, at law, for money had and received. The executor of Elijah Humphrey's (the grandfather) will was an express trust; but when Jesse Haynie (the deceased father and testator) received the

money from said executor, he was placed in a very different relation to the complainants from that in which the executor had stood. The law, to be sure, would turn him into a trustee; but he did not become such by contract, but was such by implication of law, because of his wrongful possession of money which did not belong to him; nevertheless, he held it in his own right, and for his own benefit, adversely to the complainants."

In Wilmerding v. Russ, 33 Conn., 80, the court said: " A court of equity would undoubtedly declare the sale to be one which was invalid, as against the policy of the law and constructively fraudulent; but in cases of constructive fraud, the statute of limitation applies. The decisions to this effect are conclusive." Citing Bickford v. Wade, 19 Ves., 88; Murray v. Coster, 20 Johns., 576; Robinson v. Hook, 4 Mason, 151.

Although the plaintiff in his petition alleges an express trust to exist and charges the defendant accordingly, yet the testimony of Shirley himself, who testified in behalf of the plaintiff, plainly contradicts that allegation and shows that the trust was a constructive trust. Neither by allegation nor proof did the plaintiff show that Shirley was ignorant of the fact that the railway company held his funds in trust for him, but to the contrary alleges and proves his knowledge and recognition of that fact; neither do the pleadings or proof maintain that there was actual fraud between the railway company and the defendant in the transfer of the money to Baker by the company, or that there was any secrecy or concealment practiced in effecting that transaction. The evidence shows that Shirley knew that Wasson had from the first declined to receive the money from White, and that he had urged White to repay to him the money which he had confided to him to pay to Wasson, but which was thenceforth unavailing for that purpose because the transaction with Wasson for which the money was required had been abandoned by Wasson. Shirley then claimed his money; he could not get it; without his knowledge or consent it was next heard of by him in a "suspense" account kept by the Houston & Texas Central Railway Company, and he became reconciled to permit it to remain there for his benefit. Evidently it was known to all concerned that neither White nor Wasson claimed or desired to have the money, and, manifestly, no other person than Shirley claimed it, and with no less certainty was it known to all concerned that he alone was entitled to it as between each other; and they all mutually recognized the fund, or were at least estopped by the facts from questioning that the same was a fund held in trust by said company

for the benefit of Shirley and subject to his demand. Under these circumstances, in the absence of fraud or concealment practiced by the defendant in order to conceal from Shirley a knowledge of the facts concerning the transfer to himself of the money held by the company for Shirley, there does not appear to us any good reason why the statute of limitations should not commence to run from the 20th day of March, 1877, when Baker received said money by transfer of the railway company. Fraud will only prevent the running of the statute until the fraud is discovered, or by the use of reasonable diligence might have been discovered. Kuhlman v. Baker, 50 Tex., 630; Alston v. Richardson, 51 Tex., 1. See Bremond v. McLean, 45 Tex., 11, as to the requirement of the petition to allege facts showing fraud and plaintiff's want of knowledge thereof, when he would avoid the plea of the statute of limitations. Fraud coupled with the concealment of the cause of action will suspend the running of the statute, and entitle the plaintiff to an action upon the discovery of the fraud, or at such time as he might have done so by the use of reasonable diligence. Anding v. Perkins, 29 Tex., 348.

The statute was not, however, suspended in this case under the operation of the rules just stated, for the reasons that there was no issue presented under the pleadings setting up either fraud or concealment, and because it was not alleged nor shown by the evidence that Shirley or his assignee could not have ascertained, by the use of reasonable diligence, all such facts as were necessary to apprise them of the existence of their cause of action, if any, they or either of them had. The case and the opinion before cited and so liberally quoted from (Haynie v. Paul's Ex'r, 5 Humph. (Tenn.), 293) may be aptly cited here on the point under consideration. The application made by the supreme court of Tennessee of the rule of law which should govern respecting the ignorance of a party concerning the existence of his right of action, which ignorance originated in the silence and failure by the party pleading the statute as a defense to notify the complainant concerning the facts constituting the supposed right of action, seems to be correct, and to have proper application to this case. It was held in that case that "if a person make false representations to the parties interested, by which they were prevented from investigating the matter and ascertaining their right of action, it would be a concealment of the cause of action by fraud, and the statute of limitations would commence to run only from the time the cause of action was discovered; but the mere fact of the failure to disclose rights of record in another state would not constitute fraud; as ex. gr., where a father received

money and property bequeathed to his children by their grandfather from the executor, the will being of record in North Carolina, and failed to disclose the fact to his children."

In this case the deposit was made by White with the company in 1873; the suit was brought about seven years afterwards. Shirley was informed by White as to his action in the matter, and having ratified White's course, he was fully apprised concerning the liability of the company to account to him for the money. The evidence does not show, however, any action taken by Shirley to obtain his money, or to direct its use or management. No impediment is suggested through the pleading or the evidence to Shirley's obtaining at any time previous to March 20, 1877, his money from the company, or at all events to learn during that period or subsequently as to what had been done with it. If under these circumstances, by reason of want of due attention to his affairs, he failed to learn at an earlier day than he may have ascertained the facts entitling him to sue Baker, we are of opinion that the statute of limitations commenced to run against him the same as in any case of ordinary account or debt.

The facts upon which the opinion of the supreme court rested when this case was formerly here on appeal seem from the opinion which was delivered to have been in certain features different from those shown to us by this record. On the former appeal it was held upon the case before the court that the action of the company in placing the deposit to the credit of Baker, if unauthorized, did not make Baker the trustee of Shirley in respect to any investments which might be made by Baker with the money, so as to inure to the benefit of Shirley; that if it created any liability on the part of Baker to Shirley, it was, at most, a right of action for money had and received, or converted to his use and benefit.

The supposed want of privity of contract between Shirley and Baker seems to have influenced, if it did not wholly determine, the conclusion announced in the opinion.

A careful reading of the statement of the case made by the reporter, in connection with the opinion, inclines us to believes that the court misconstrued the record as showing that Shirley deposited the money with White as a banker and on general deposit, instead of depositing it as a trust to hold for the purpose of meeting Shirley's draft in favor of Wasson when the same should be presented, and to be returned to Shirley in case Wasson declined to receive it. The opinion on that assumption held that there was no privity between Shirley and Baker. The reporter's statement of the case seems to

give a different view of the record from that assumed by the court.

As an illustration by example given in Perry on Trusts (sec. 14), in respect to privity in estate between those who may be affected through a trust, he says: "And so there must be privity between the persons to be bound by the trust; . . . and so if the trustee sell the estate to a purchaser with full notice of the trust or confidence, or if he transfer the estate to a volunteer without consideration, the estate and the persons to whom it comes in such manner will be bound by the trust, because there is both privity of estate and of persons. But if the trustee sells the estate to a third person for a valuable consideration, without notice of the trust, neither the estate nor the purchaser for value and without notice will be bound by the trust, for there is in such case no privity between the persons." 1 Perry on Trusts, p. 12, § 14. See, also, id., sec. 223, where it is said that "if in any way a person purchases with what the law construes to be full notice that another has a legal or equitable title to the property, or that he has been deprived of his interest by accident, mistake or fraud, he will be held as a trustee."

Under the facts relied on by the plaintiff in the case as last tried, we think that Shirley showed a cause of action for the recovery of his interest in the bonds sued for originally or their value proportionate to the amount or number of bonds paid for by his money used in the purchase by the defendant; was entitled to recover his portion of the bonds if to be found,— by proceedings in partition if practicable,— or if the property is not subject to be recovered in kind, that he may recover the value of his said interest.

The plaintiff, if entitled to sue otherwise, may elect to proceed for the money, as he has done in this proceeding, under an amendment of his petition made probably in consequence of the reversal of the former judgment and the reasons given therefor by the supreme court's opinion.

The funds of Shirley are traceable by the evidence into the bonds with unmistakable certainty. If the trustee invests the trust fund or its proceeds in other property, the *cestui que trust* may follow the fund into the new investment, so long as he can identify the purchase as made with the trust property or its proceeds, although the trustee may have taken the title in his own name, or in the name of any other person with notice of the facts. 2 Perry on Trusts, sec. 836 and sec. 835. See, also, 1 Perry on Trusts, 127, 128.

Story, in his treatise on Equity Jurisprudence, says: "It has been truly said that the only thing inquired of in a court of equity is

whether the property bound by a trust has come into the hands of persons who are either bound to execute the trust or to preserve the property for the persons entitled to it. If we advert to the cases on the subject, we shall find that trusts are enforced not only against those persons who are rightfully possessed of trust property, as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust. And whosoever so comes into possession is considered as bound, with respect to that special property, to the execution of the trust." 1 Story's Eq., sec. 533. See, also, 2 Story's Eq. Jur., secs. 1257, 1258.

" The general proposition, which is maintained both at law and in equity upon this subject, is, that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right (not being *bona fide* purchasers for a valuable consideration without notice), any more valid claim in respect to it than they respectively had before such change." 2 Story's Eq. Jur., sec. 1258. An abuse of a trust can confer no rights on the party abusing it, or on those who claim in privity with him. Id. See, also, same authority, secs. 1261*c* and 1261*d*.

We conclude upon the whole case that because it appears from the evidence that the plaintiff's action was barred by limitations, the judgment ought to be reversed; and in view of the fact that it is not entirely apparent to us that justice would be best promoted by the supreme court rendering the judgment which ought to have been rendered below on the last trial, it is deemed more in consonance with the rights of the parties to remand the cause for further proceedings in order that both parties having before them the opinion of the supreme court upon the various questions which have been discussed, that they may prepare their pleadings and try the cause under views here presented not heretofore, perhaps, fully acted upon by the parties.

Therefore we report our conclusion to be that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved March 20, 1883.]