# JANUARY, 1913.

Port Arthur Rice Milling Company v. Beaumont Rice Mills et al.

No. 2377.    Decided February 14, June 19, November 20, 1912, January 2, 1913.

### 1.—Limitation—Undiscovered Fraud.

Limitation does not run against an action for fraud until it is discovered or might have been by the use of reasonable diligence.. (P. 519.)

### 2.—Same—Conversion.

Where defendants converted plaintiff's property by a fraudulent conspiracy by which they were made to appear as innocent purchasers from apparent owners, without notice of his rights, his cause of action was not for the conversion alone, nor did limitation run from the date of conversion; it was for conversion by fraud which concealed from him his right of action against them, and limitation ran only from the time of his discovery of the fraud and of his right of action, if he was not at fault in not sooner discovering it. (Pp. 520-522.)

### 3.—Same—Case Stated.

Plaintiff had a chattel mortgage from B on rice raised by him on certain land, not extending to rice raised thereon by his subtenants or others. By fraudulent conspiracy with defendants, B raised rice on this land, conducting the cultivation of it in the name of others by whom it was mortgaged to defendants for fictitious claims and ultimately sold, the proceeds going to defendants, who knew that it was raised by B and subject to plaintiff's mortgage, but represented themselves to plaintiff as innocent purchasers from those nominally raising it. On discovery of defendants' participation in this fraud, plaintiff brought suit. Held that limitation ran against his action, not from the time of the conversion, nor that of his knowledge that the property converted was subject to his mortgage, but from the time of his discovery of defendant's participation in the fraud. (Pp. 517-522.)

### 4.—Practice in the Supreme Court—Question of Fact.

Where the evidence is undisputed and the facts settled by the findings of the Court of Civil Appeals, the Supreme Court does not exceed its authority in reversing and rendering the judgment on a determination of the law applicable to such facts differing from that adopted by the appellate court. (P 522.)

### 5.—Partnership—Verdict—Judgment.

In an action against a partnership for fraud each partner is liable for the acts of the others; a judgment against the partnership and against each

member was not improper on a verdict finding against the partnership, but "against no individual" thereof; or if erroneous, correction should have been sought in the trial court. (P. 526.)

Error to the Court of Civil Appeals, First District, in an appeal from Jefferson County.

The Port Arthur Rice Milling Co. sued Beaumont Rice Mills, a partnership, and others, and had judgment. On defendants' appeal this was reversed and rendered in their favor. Appellees, plaintiffs below, then obtained writ of error.

*J. V. Fleming, M.·M. Mothner, Smith, Crawford & Sonfield,* and *D. W. Glasscock,* for plaintiff in error.—The cause of action in favor of appellee against appellants is based on their fraud in connection with the mutation of the property in controversy, which resulted in destruction of plaintiff's lien, and in the subsequent receipt by appellant of the proceeds of said crop. The mere receipt of the proceeds of mortgaged property does not form the foundation for action for damages, and will not support a judgment of any kind. Enc. of Law, Vol. 19, pp. 242 et seq.; Dorsey Machine Co. v. McGaffrey, 139 Ind., 545, 47 Am. St., 290; State v. Land & Cattle Co., 73 Texas, 453; Shannon v. White, 60 Am. Dec., 120, 6 Rich. Eq., 96; Reid, Inquiry Into the Human Mind, ch. 6, secs. 24, 428, 434; Robertson v. Hunt, 77 Texas, 321; Blalock v. Bowling, 44 S. W., 305.

The verdict of the jury in this case is sufficient and supports the judgment rendered by the court. The verdict of the jury reads: "We the jury find for the plaintiff, the Port Arthur Rice Milling Company, the sum of Eleven Thousand Three Hundred and Sixty and 98-100 Dollars ($11,360.98) against the defendant, Beaumont Rice Mills, as a partnership, and against no individual thereof." In the judgment the recovery is: "Of and from the defendant, Beaumont Rice Mills, a co-partnership composed of J. E. Broussard, J. M. Hebert, L. M. Hampshire, M. S. Hampshire, E. J. LeBlanc, and B. C. Hebert, and of and from the said defendants J. E. Broussard, J. M. Hebert, L. M. Hampshire, M. S. Hampshire, E. J. LeBlanc and B. C. Hebert, each individually as such partners, the sum, etc." Rev. Stat., arts. 1334, 1347; G. C. & S. F. Ry. Co. v. James, 73 Texas, 18; Darden v. Matthews, 22 Texas, 326; Horton v. Reynolds, 8 Texas, 294; Mays v. Lewis, 4 Texas, 46.

*Taliaferro & Berry* and *A. D. Lipscomb,* for defendant in error. —Where plaintiff has delayed suit for conversion of mortgaged property more than two years after defendant's adverse appropriation of it, the delay is not excused unless plaintiff proves (in conformity to corresponding allegations) the discovery of some new essential element of his cause of action within the statutory period before suit, and also proves circumstances which authorize the inference that reasonable diligence on the part of the plaintiff would not have resulted in such discovery earlier than the statutory period before suit. Calhoun v. Burton, 64 Texas, 511; Kuhlman v. Baker, 50 Texas, 637; Alston v. Richardson, 51 Texas, 6; Connally v. Hammond, 58 Texas, 17; Vernor v. Sullivan, 126 S. W., 641.

Where fraud is incidental to a cause of action, in order to postpone the statute, it must consist in affirmative acts of the defendant himself (Wood, Lim., sec. 276, p. 261 (3d ed.) ; Bates v. Preble, 161 U. S., 162; 25 Cyc., 1220; Munsen v. Hallowell, 26 Texas, 486), operating to conceal either the right of the plaintiff to the subject matter, or the injury to plaintiff's right, or the connection of the defendants with such injury; and mere failure to disclose facts which would show the cause of action will not operate in such case to postpone the statute.     25 Cyc., 1217, 1218; Stanford v. Finks, 45 Texas Civ. App., 30, 99 S. W., 452, and cases cited; Meyer Bros. v. Fray, 48 S. W., 752; Kennedy v. Baker, 59 Texas, 159.

In order for fraud to postpone the running of the Statute of Limitations it is necessary that the circumstances of fraud should have been such as to conceal the accrual of plaintiff's cause of action, and it is error to charge a jury that mere failure to discover fraud in the transaction, irrespective of diligence, is sufficient to postpone its operation, more especially in a case where the cause of action is for a conversion and would exist independently of fraud.     Bates v. Preble, 151 U. S., 162; Stanford v. Fink, 45 Texas Civ. App., 30, 99 S. W., 452; Dunn v. Taylor, 42 Texas Civ. App., 241, 94 S. W., 348; Clement v. Clement, 44 Texas Civ. App., 574, 99 S.. W., 140; Kennedy v. Baker, 59 Texas, 159; Williams v. Lumpkin, 86 Texas, 641, 26 S. W., 493.

"A cause of action is generally held to be a union of the right of the plaintiff and its infringement by the defendant." 1 Encyc. of Pleading & Practice, 116; Rice v. C. B. & Q. Ry. (Mo.), 131 S. W., 379.

When a plaintiff knows of his right and its infringement, and of defendant's participation in that infringement, there cannot exist ignorance of any fact such as to postpone the operation of the Statute of Limitations.     McDonald v. McGuire, 8 Texas, 371; 25 Cyc., 1217; 19 Am. & Eng. Encyc. of Law, 248.

The determination of questions of fact in the Court of Civil Appeals is final, conclusive, and binding upon the Supreme Court of Texas; and where it is manifest on the face of the proceedings that a judgment of the said Supreme Court is based upon findings on questions of fact irreconcilable with the findings of the Court of Civil Appeals, such judgment of the Supreme Court is in excess of its jurisdiction and void.     Art. 5, secs 1, 3 and 6, Constitution of Texas; arts. 940, 996, Rev. Stats. of Texas; Word v. Railway Co., 88 Texas, 661.

Whenever a court of a State renders a judgment purporting to authorize the taking of property or collection of money from any person within such State, the action is a violation of the last clause of the first section of the Fourteenth Amendment to the Constitution of the General Government if, under the State law, the judgment be not within the power of such court to render and it so appear on the face of the record.     Scott v. McNeil, 154 U. S., 34.

A junior mortgage to cover recited advancements suggests the inquiry whether the junior mortgagee was without notice of the prior mortgage, neglect of which inquiry is such negligence as to forbid postponement of the Statute of Limitations applicable to an action

for conversion of the mortgaged property by the junior mortgagee. Bass v. James, 83 Texas, 112.

A verdict which the jury does not think ought to stand as a verdict against any individual member of a co-partnership ought not to be accepted as basis for a judgment fixing the liability of the co-partnership, the pleadings, charge and evidence all authorizing a verdict for or against the individual members equally with the firm. 15 Encyc. of Pl. and Prac., 951, citing Bosworth v. West, 68 Ga., 825.

In jury trials the judgment must conform to the verdict and may not contradict it in any material particular. Rev. Stats., art. 1335; Constitution of Texas, art. 1, sec. 15; Choate v. Railway Co., 91 Texas, 409; Claiborne v. Tanner, 18 Texas, 78; Hicks v. Armstrong, 142 S. W., 1195.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This is a suit by Port Arthur Rice Milling Company, filed November 22, 1907, in the District Court of Jefferson County, against Beaumont Rice Mills, a partnership composed of J. E. Broussard, J. M. Hebert, L. M. Hampshire, M. S. Hampshire, E. J. LeBanc and B. C. Hebert, and against the partners as individuals, to recover the value of the rice crop grown in 1905 on 505 acres of land, less 150 acres excepted, in the Stivers league in Jefferson County, alleged to have been converted by defendants.

In February and June, 1905, one Burge executed and delivered to plaintiff two chattel mortgages to secure money already advanced and to be advanced him by plaintiff with which to plant, grow and harvest a rice crop for the current year. The chattel mortgages were so framed that, as between the plaintiff and the mortgagor, as they relate to the particular piece of land on which was grown the rice alleged to have been converted by defendant, they were clearly enforcible, but on account of the description of the land to be covered by these mortgages they were not enforcible as to third parties acting in good faith and without actual knowledge.

The land was as a matter of fact planted and cultivated by Burge, the mortgagor, in which event it was subject to plaintiff's claim, but in order to keep the knowledge of this fact from plaintiff, Burge had the rice crop on this piece of land cultivated in the name of one Cannon, and when Cannon died it was placed in the name of F. D. Naylor, to whom he pretended to have sub-let the land with the consent of the original lessor. Burge also executed a bill of sale to Naylor for this rice crop, dated about February 1, 1905, but not filed until some time in October of that year, and Naylor, in September, 1905, executed and delivered two chattel mortgages to the Beaumont Rice Mills covering the rice land in controversy, and on October 3, 1905, conveyed by bill of sale said rice crop to W. A. Hebert in consideration that he assume the payment of $9,680.00 recited to be due the Beaumont Rice Mills by Naylor.

It was alleged by plaintiff and its cause of action seems to have been based on the fact that all of said conveyances, mortgages and instruments were made in bad faith, and were not bona fide transactions and were merely simulated transactions devised and executed

by the parties concerned therein for the purpose of depriving plaintiff of the property therein described, and on which plaintiff had a valid lien; that the defendants and each of them confederated, acted and conspired with the Burges, F. D. Naylor and W. A. Hebert, and other parties unknown to plaintiff, and were concerned in and advised and had knowledge of all said simulated transactions; that defendants caused the said W. A. Hebert to deliver possession of said rice crop to them for the benefit of said Burge and to assist said Burge to defraud plaintiff thereof. That these facts were concealed from plaintiff by defendants and the true state of affairs was not known to or discovered by plaintiff until a short time before the institution of this suit in November, 1907.

The defendants pleaded a general denial and the statute of two years' limitation, alleging that the rice crop was sold and bought by defendants on or about October 27, 1905, at which time plaintiff's cause of action accrued, and then pleaded specially that they acted in good faith in taking the mortgages on the rice crop in controversy for the purpose of securing themselves in advancements made and to be made by Naylor, they being competitors with plaintiff in making advances to various rice planters in Jefferson County and taking mortgages on the crops of rice to secure such advances; that they made an examination of the records of Jefferson County and such facts were gathered therefrom that justified them in believing that plaintiff's mortgages did not cover the rice crop in controversy and that they were innocent lien holders, and such other facts as made their action bona fide.

The cause was tried with a jury and a verdict returned for plaintiff, Port Arthur Rice Milling Company, for $11,360.98. Upon appeal by defendants, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the appellants, defendants below, basing its action on the statute of limitations of two years, holding that plaintiff's cause of action accrued on October 27, 1905.

The Court of Civil Appeals puts stress upon the fact that the crop of rice in question was publicly sold and bought in by McFaddin-Wiess-Kyle-Rice Milling Company, and the proceeds of such sale turned over to defendant, Beaumont Rice Mills. That when this sale was made a written memorandum of sale was executed, specifying the terms and conditions upon which such sale was made, but that, "although plaintiff knew of the sale and of the fact that the rice was purchased by the McFaddin-Wiess-Kyle-Rice Milling Company, it did not know of the written memorandum of sale, nor that the proceeds, by its terms, should be paid over to the Beaumont Rice Mills, but could have ascertained this fact by the exercise of ordinary diligence." In view of the pleadings and findings of fact by the Court of Civil Appeals, we do not consider it of controlling importance that plaintiff knew the rice crop raised upon the tract of land in question had been converted by defendants some time in October or November, 1905. It may be conceded this fact was known to plaintiff, but its cause of action is based upon a different state of case. The rice, as between plaintiff and Burge, was unquestionably subject to its mortgages given by Burge, and likewise as to defendants, unless

they were innocent lien holders and *bona fide* purchasers for value of
the rice crop without actual notice of plaintiff's equities.   This we
think is clearly shown by the record and seems to have been the con-
tention of defendants as appears from their first assignment of error
in the Court of Civil Appeals.   It follows that unless plaintiff could
show by competent testimony that defendants had actual knowledge
independent of the recorded mortgages that plaintiff's liens covered
and embraced the rice crop in dispute, or that their claim was not
based upon a valuable consideration but founded in fraud, it had no
well grounded cause of action.

On the issue as above indicated, the Court of Civil Appeals find the
following facts:   "The testimony in the record abundantly shows
that the five-hundred-acre crop south of the railroad, in controversy,
was farmed and owned by Burge and that, under the contract between
Burge and the plaintiff, all of it except 150 acres was subject to the
latter's mortgage.   Burge, however, with the fraudulent intent of
deceiving plaintiff as to the ownership, placed the crop in the name
of Cannon, one of his tenants, and Cannon having died in the early
part of the season, Burge then placed the crop in the name of one
Naylor, and later in the season the crop was transferred by Naylor
to one W. A. Hebert.   All these transactions were simulated and
fraudulent and appellant so admits.   The record further justifies the
conclusion, and we so find, that the appellants knew the 500 acres
were farmed by Burge and knew that the various transfers of said
crop above referred to were simulated and fictitious and that the
crop was subject to plaintiff's mortgages."

The Court of Civil Appeals, after a further finding of fact that
plaintiff knew the crop of rice in controversy was farmed and owned
by Burge and therefore subject to its mortgages, proceeded to dis-
pose of the question of law involved wholly without reference to the
important and controlling fact whether or not plaintiff knew, or by
the exercise of proper diligence might have known, of defendants'
knowledge of Burge's fraud in conjunction with Cannon, Naylor and
W. A. Hebert, and their participation therein as disclosed by the
findings of said court.

Plaintiff in error, the Port Arthur Rice Milling Company, in its
petition for writ of error in this court, makes the following assign-
ment of error:

"The Court of Civil Appeals erred in its conclusion of law to the
effect, in substance, that plaintiff's cause of action herein is one of
simple or ordinary conversion, and, therefore, complete and accrued
when plaintiff knew the crop was subject to its mortgage and knew
of the sale of the crop by W. A. Hebert to the McFaddin Mills, and
knew, or was chargeable by law with the knowledge that, defendants
received the proceeds; and in holding thereon that plaintiff's cause
of action was barred by limitation and that the running of the statute
was not postponed; and in reversing and rendering this cause against
plaintiff; because the basis of plaintiff's cause of action herein is the
fraud perpetrated by defendants,—not merely the technical or legal
fraud involved in ordinary conversion;—not merely that defendants
received and applied to their own use proceeds of rice subject to plain-

tiff's mortgage and thereby converted same;—but the actual fraud of defendants, in that defendants knew that the crop was farmed by Burge and was subject to plaintiff's mortgages, defendants knew that the transfers and all the transactions by which the crop was placed in the actual possession of and ostensibly owned by Naylor and later by Hebert were simulated, fictitious and fraudulent, and defendants with this knowledge, but acting in ostensible ignorance thereof and in ostensible good faith, took, pretended and simulated mortgages to themselves from Naylor and Hebert to secure false notes and accounts representing fictitious advances and indebtedness on the crop, fair on their face and pretended by defendants to be genuine, under color of which as ostensible innocent third parties with equity superior to the rights of plaintiff, defendants obtained the proceeds of the crop; because, since under the description in plaintiff's mortgage the crop was not subject thereto if farmed by 'other than Burge,' if the defendants as innocent third parties finding Naylor and Hebert in actual possession of the crop and notoriously claiming same had made *bona fide* advances to them on the crop and taken mortgages from them in good faith and in pursuance thereof, received from them the proceeds of the crop in satisfaction thereof, all in ignorance of the fact that Burge really farmed the crop, and innocent of any connection with the fraud and guiltless of any fraud of their own, in other words, if defendants had in fact acted as they pretended to act, the equities of defendants would in fact have been as they claimed superior to the rights of plaintiff, and plaintiff had no cause of action against defendants even if plaintiff knew of the sale and had known that defendants received the proceeds and also knew that Burge farmed the crop and therefore that as between it and Burge and those having knowledge of that fact the crop was subject to its mortgage. And the Court of Civil Appeals has misconceived plaintiff's cause of action in this respect, and erred therein, and in overruling this point as presented in different forms in the first, second, third and fourth grounds of error specified in plaintiff's application for rehearing."

We think this assignment well grounded and clearly sustained by both the facts as found by the Court of Civil Appeals and the law as applicable thereto. The question of law arises out of the application of the statute of limitation to the facts ascertained as they relate to the cause of action declared upon by plaintiff in error. In determining this issue it is necessary to first ascertain what plaintiff's cause of action was as sued upon, and when such cause of action accrued to it. The learned judge of the Court of Civil Appeals seems to have been of opinion that as soon as the rice crop in dispute was appropriated by defendants with plaintiff's knowledge, plaintiff's cause of action for conversion accrued, and limitation began to run from that date. This position is correct, generally speaking, and when not attended with the existence of any material circumstances or facts that would deny the complainant the right to maintain his cause of action in addition to the right to institute suit upon it. An error in this case seems to have arisen out of a want of a full and accurate conception of what a cause of action really imports in its legal sense.

Before it can be said that a cause of action exists in a legal sense, there must be such a mature right as may be declared upon and maintained, subject only to such valid defenses by which it may be defeated. In 25 Cyc., 1065 the rule is laid down as follows: " 'The accrual of the cause of action' means the right to *institute* and *maintain* a suit;.and whenever one person may sue another a cause of action has accrued and the statute begins to run."

Again in 25 Cyc., 1065, it is said: "The statute of limitation begins to run from the time when a complete cause of action accrued, that is, when a suit may be maintained, and not until that time."

The application of this doctrine may be made plain by the following illustration. A gives a chattel mortgage to B on a horse to secure a debt. B fails to file the mortgage with the proper officer as required by law. C buys the horse from A ostensibly for value and without notice of B's lien. As a matter of fact C has received and appropriated to his use property on which B had a valid and subsisting lien, yet it would not be contended that B had a cause of action against C. On the other hand, should it turn out that the purchase of the mortgaged property by C was simulated and fradulent and without value and with full knowledge of B's chattel mortgage, but this fact is concealed from B by the declaration of good faith on the part of C until after the lapse of two years from the time of the simulated purchase, would it be contended that B could not institute and maintain his suit for the conversion of the mortgaged property after the lapse of two years from the time C appropriated the mortgaged property, provided he did not discover the fraud, and could not have done so by the use of ordinary diligence, until after the period of two years had passed? We do not think a contrary contention could be successfully made upon any ground legal or equitable supported by authority or principle. Should it be asked why B would not have a cause of action against C at the time C purchased the mortgaged property, we answer, because if C was acting in good faith in making his purchase, as B was bound to assume in view of the protestation of innocence, he had a legal right to make the purchase and having such right no cause of action accrued against him. After the discovery of the fraud the mortgagee's cause of action was one for fraud and conversion combined, and would not be defeated by the running of the statute of limitation.

The case at bar is precisely parallel with and analogous to the case illustrated. Plaintiff's mortgages were so written as to cover such rice land as was cultivated by Burge on the south of a certain line in a certain survey and to embrace no land cultivated by any other person than Burge, and while the land in dispute was cultivated by Burge, this fact was concealed by a fradulent scheme, the land being cultivated ostensibly by others and in the name of others. The real fact relating to the cultivation and ownership of the land in dispute was ostensibly concealed from defendants who in ostensible good faith accepted liens on the rice crop so mortgaged to plaintiff. Rights accruing under these circumstances, if made in good faith, were superior to plaintiff's mortgages. When defendants purchased and appropriated the rice crop in controversy in October, 1905, under mort-

gages, transfers and bills of sale having all the indicia of honesty and good faith, which plaintiff assumed and was bound to assume in the light of the declarations of good faith on the part of defendants, the transactions in so far as defendants were concerned were fair and free from the taint of fraud, and hence at that time, notwithstanding defendants had received and appropriated with plaintiff's knowledge the rice crop so subject to its mortgages, it had no cause of action against defendants. But having used due diligence to ascertain the true status of affairs in relation to its rights, after the lapse of two years the fraud and duplicity of defendants were revealed to plaintiff by one of the participants in the fraudulent conspiracy of which defendants had full knowledge and in which they participated, as has been hereinbefore indicated. Plaintiff not having had knowledge of defendants' guilty knowledge of and participation in the scheme to defraud plaintiff in its rights, for the first time had a cause of action against defendants upon the discovery of such fraud.

This doctrine in its practical application insofar as it relates to the case at bar, is nothing more in effect than the assertion of the doctrine that fraud undiscovered suspends the running of the statute of limitation. In the absence of fraud the statute would have begun to run from the date of the conversion of the rice upon which plaintiff had a mortgage. But it is a definitely and well settled rule in this State that fraud prevents the running of the statute of limitation until it is discovered, or until by the use of reasonable diligence, it might have been discovered. (Cooper v. Lee, 75 Texas, 121; Kennedy v. Baker, 59 Texas, 160; Heirs of Brown v. Brown, 61 Texas, 49; Munson v. Hallowell, 26 Texas, 486; Ripley v. Withee, 27 Texas, 14; Bremond v. McLean, 45 Texas, 11.)

It appears from the record in this case that the learned trial judge in a most careful and elaborate charge submitted to the jury the question of defendants' fraud and its concealment from the knowledge of plaintiff and charged them, if plaintiff had knowledge of such fraud as was alleged by it, or by the exercise of reasonable diligence might have discovered such fraud in time to have brought its suit before the lapse of two years, to find for defendants. The cause was fairly tried and the jury acting within the performance of their duty found for the plaintiff, and their verdict being fully supported in every particular by the testimony in the record and also fully supported by the findings of the material facts by the Court of Civil Appeals, and the judgment having been rendered by the Court of Civil Appeals on a question of law arising out of the application of the facts to the law, we see no reason why in reversing the judgment of the Court of Civil Appeals the judgment of the lower court should not be affirmed. The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court affirmed.

### ON MOTION FOR REHEARING.

MR. JUSTICE DIBRELL delivered the opinion of the court.

On a former day of this term of court the judgment of the Court of Civil Appeals in this cause was reversed and the judgment of the

lower court affirmed. The cause was among the first to come under the new statute requiring notice to be given of the filing of applications for writ of error and providing that where an answer is filed the court may in its discretion when the writ is granted decide the case without a formal submission thereof. Upon an investigation of the application for writ of error in the present case the court was of opinion the writ should be granted, and at the same time it was thought the questions involved were not of such importance as to demand oral argument in aid of their solution, and the case was decided upon the briefs and written arguments of the parties. In due time a motion for rehearing was filed and overruled. Subsequent thereto a motion was filed by the defendant in error's counsel urging with unusual insistence that they misconceived the effect and purpose of the new statute and that they did not conceive that it authorized the court to decide the case without a formal submission and opportunity for oral argument. In view of these facts and circumstances— the court is not inclined to deprive any litigant of the opportunity of oral argument, which is always helpful to the court in arriving at a correct decision of the case in hand, the sole aim and desire of the court—it is thought the ends of justice may be best subserved by setting aside the former judgment and order of this court and granting a rehearing. In doing this we desire to say that we have not changed our view of the law of the case as expressed in the written opinion and will adhere to that view, unless it can be shown that we have misconceived the material facts as disclosed by the record and bearing upon the legal points determined in the opinion.

A rehearing is now granted, and the case will be set down for argument at an early day.

Opinion delivered June 19, 1912.

Mr. Justice Phillips not sitting.

### ON REHEARING.

Mr. Justice Dibrell delivered the opinion of the court.

This cause was decided and a written opinion delivered on February 14, 1912, under the new statute requiring notice to be given of the filing of applications for writs of error, and providing that the Supreme Court may in its discretion upon granting the writ of error decide the case without a formal submission. Port Arthur Rice Milling Co. v. Beaumont Rice Mills, et al., 143 S. W., 926. Subsequently, on June 19, 1912, upon motion for defendants in error a rehearing was granted. (148 S. W., 283.) On November 13, 1912, elaborate oral argument on the part of both parties was heard by the court and the cause regularly and formally submitted.

The principal contention on the part of counsel for defendants in error in their motion for rehearing and formal submission of the cause for oral argument was that in deciding the case originally this court misconceived the material facts upon which the opinion was based, and for this reason it was stated in the short opinion in granting the rehearing that we had not changed our view of the law as announced in the original opinion, and would adhere to the views there expressed

unless it was shown that the court had in reality misconceived the material facts upon which the decision rests. While counsel for defendants in error has shown great ability, research and industry in extended written and oral arguments, we are not the least shaken in our former views of the facts and law of the case.

We were never impressed with any serious contention on the part of the defendants in error that they had any defense against plaintiff's cause of action, except that of limitation. It is equally clear that plaintiff's cause of action was barred by the statute of two years limitation, unless the statute was suspended by the concealed fraud of defendants in connection with the mortgagor, Burge, by which the mortgaged rice crop was converted to plaintiff's damage. It is immaterial to the vital question that plaintiff learned two years before the institution of the suit that the rice land in question was in fact worked by Burge and subject to its mortgage and that defendants had received the proceeds of the sale of said rice crop, provided plaintiff did not know and could not have known by the exercise of ordinary diligence that defendants knew of and participated in the fraud of Burge in disposing of the mortgaged rice. As found by the Court of Civil Appeals plaintiff knew or might have known by the exercise of ordinary diligence, that defendants had received the proceeds of the rice on which plaintiff had a prior lien, but it has no where been shown in the record or by any finding of the Court of Civil Appeals that plaintiff knew or by due diligence might have known of the fraud of Burge, Cannon, Naylor and Hebert, participated in by defendants until within a few days before the institution of this suit. The fact that defendants received the proceeds of the mortgaged rice, but as subsequent innocent and bona fide lien holders without any knowledge of plaintiff's prior lien, as represented to plaintiff and as plaintiff believed, gave it no cause of action against defendants. Plaintiff's cause of action existed by reason alone, under the circumstances of this case, of defendants' fraud, and as long as that fraud was concealed from plaintiff by any act of defendants, the statute of limitation was held in abeyance.

We do not care to discuss further the well recognized principle of law, already sufficiently fully discussed in our original opinion. The record shows that plaintiff disclaimed any knowledge of the fraud referred to and that defendants had always protested their good faith and innocence in their transaction with Burge, and that its knowledge of the true position of defendants was first revealed by the letter from Burge received a few days before this suit was instituted. This was an issue before the jury and was determined by them in favor of plaintiff. It is inconceivable that plaintiff possessed of the knowledge of defendants' fraud so culpable would have so delayed its action.

It cannot be with reason contended that plaintiff had a cause of action that it could have maintained against defendants when it learned that the rice in question was produced by Burge on the land embraced in the mortgage, upon the ground that it was the duty of defendants to inquire of plaintiff as to the effect of its mortgage, and in failing to make such inquiry was affected with constructive

notice. Plaintiff's mortgage covered all the area of a certain tract of land worked by Burge and covered none that was worked by another than Burge. Ostensibly the land in dispute was worked by another than Burge. Such person was in possession of the land and ostensibly in so far as defendants knew the land in question was not covered by plaintiff's lien. This must be conceded and herein lay defendants' defense against the right of plaintiff to recover the proceeds of the rice converted, were they not besmirched with the fraudulent transactions of assisting Burge to fraudulently appropriate the mortgaged property in question.

Having fully discussed the salient points upon which we think the judgment of the trial court should be affirmed, and having stated the material facts bearing upon that point correctly in our first opinion we cannot further quote the testimony or findings of the Court of Civil Appeals without repeating what has already been said. It is therefore sufficient to say that the testimony is abundant to show, and the jury have so found, that plaintiff was made to believe by affirmative statements of defendants or some one of them that they had acted in good faith and that they had advanced and lost money on their transaction with Burge, when as matter of fact they colluded with Burge to defraud plaintiff out of its just claim and lien, and paid over to Burge several thousands of dollars, the proceeds of the rice crop which was covered by plaintiff's mortgage, thus the willing instruments of Burge to defraud plaintiff. We have called upon defendants' counsel, but he has failed so to do, to point out the testimony in the record showing or tending to show that plaintiff had knowledge or by the use of ordinary diligence could have acquired the knowledge of defendants' fraudulent participation in Burge's scheme to defeat plaintiff's mortgage lien, until the mysterious letter from New Mexico came to hand bearing the news that defendants had paid neither Naylor nor Hebert anything, but had paid over twenty thousand dollars to some one, and that an officer of said Mill "was the director general of the whole cheese." It is true this information was meagre, but it was sufficient to indicate to plaintiff the guilty participation of defendants in the fraudulent transaction that resulted in plaintiff's great pecuniary loss. Until this time the statute of limitation was held in abeyance, and it did not begin to run until such revelation was made. We think the conclusion heretofore reached in this case the correct one, and that the judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed, and it is accordingly so ordered.

Opinion delivered November 20, 1912.

### ON SECOND MOTION FOR REHEARING.

Mr. Chief Justice Brown delivered the opinion of the court.

Crediting counsel with a proper spirit of fairness and candor in presenting this motion, we must say that a strange persistency in misunderstanding and misstating the opinion of this court is manifest. We state the true situation:

1. The Court of Civil Appeals held that the statute of limitation

began to run from the date of the conversion of the rice by the defendants in error. The evidence is undisputed that the Beaumont Rice Mills entered into a secret agreement with Burge to aid him in defrauding the Port Arthur Rice Milling Company of its debt and for that purpose concealed the transaction with Burge. This court held that the statute of limitation began to run from the discovery of the fraud.

2. This court acted alone upon the facts found by the Court of Civil Appeals and the undisputed evidence of the concealment of the fraud by defendants in error. Counsel for plaintiff in error has not denied the fraud, did not do so in argument, but virtually admitted it.

3. Each partner was liable for the acts of the others within the scope of the business. A verdict against the partnership was against each partner. If, however, there was error in the form of the judgment of the trial court, it should have been corrected in that court. This court exercised its superior authority in accordance with the Constitution and law and the statement that it has transcended its constitutional authority is wholly unfounded.

The motion for rehearing is overruled and it is ordered that the issuing of the mandate be stayed for thirty days to enable plaintiff in error to make application for a writ of error to the Supreme Court of the United States.

MR. JUSTICE PHILLIPS did not sit in determining this motion.

(Delivered January 2, 1913.)