FIRST NAT. BANK OF WICHITA FALLS et al. v. ZUNDELOWITZ. (No. 624.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1914.)

1. APPEAL AND ERROR (§ 527*) — RECORD — CONCLUSIONS OF FACT AND LAW.

Conclusions of fact and law filed by the trial court 28 days after adjournment of court cannot be considered by the appellate court; they not being a part of the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2381–2383; Dec. Dig. § 527.*]

2. ADVERSE POSSESSION (§ 60*) — HOSTILE CHARACTER OF POSSESSION—PARTY WALL.

A bank, owning the north half of a lot and desiring to build thereon, entered into an agreement with the owner of the other half, whereby the bank was to build its south wall on the line, and, when the other owner built on his half, he was to pay the bank one-half the cost thereof, the covenant to run with the land. The other owner having built and sold to plaintiff, the bank demanded from plaintiff one-half the cost of the wall, who refused to pay and repudiated the covenant, and held possession for 16 years thereafter. *Held*, that plaintiff had acquired title by adverse possession, as limitations began to run from the repudiation of the covenant; the 10-year statute of limitations being applicable.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–312, 323, 328; Dec. Dig. § 60.*]

3. ADVERSE POSSESSION (§ 63*) — HOSTILE CHARACTER OF POSSESSION — VENDOR AND PURCHASER.

A vendor may retain title to land as against the vendee as security for the purchase money, and the vendee's possession is not ordinarily adverse, but, on repudiation by the vendee, adverse possession begins to run from that time, notwithstanding the title of the vendor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 333–357; Dec. Dig. § 63.*]

4. PARTY WALLS (§ 8*)—RIGHT OF SUPPORT.

The easement to an adjoining building by a party wall is the right of support of the wall.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 24–41; Dec. Dig. § 8.*]

5. INJUNCTION (§ 108*) — ACTION FOR INJUNCTION—DEFENSES.

In an injunction suit by an adjoining owner against a bank seeking to compel the bank to close an opening in plaintiff's wall, it was not a condition precedent to the relief prayed that plaintiff should comply with a previous agreement to pay one-half the cost of the party wall in which the opening was cut.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 184–186; Dec. Dig. § 108.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Injunction suit by A. Zundelowitz against the First National Bank of Wichita Falls and others. Judgment for plaintiff, and defendants appeal. Affirmed in part and reversed and rendered in part.

R. E. Huff and Mathis & Kay, all of Wichita Falls, for appellants. Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

HENDRICKS, J. On the 2d day of June, 1892, the Panhandle National Bank, the predecessor of the appellant, the First National bank of Wichita Falls, was the owner of the north half of a business lot, 50x150 feet in size, in said town, and Kean & Coffield were the owners of the south half of said lot, and upon said date they entered into the following party wall agreement:

"That whereas the said bank is the owner of the north half of lot one (1), block one hundred and sixty-four (164), in the town of Wichita Falls, Texas, and the said Coffield & Kean expect to build on their lot, but are not now ready: It is thereupon agreed between the parties that the said bank may at once proceed to erect a two-story brick building on the north half of said lot one (1), block one hundred and sixty-four (164), and shall place its south wall exactly over the dividing line, between the north half and the south half of said lot one, the said wall to be 80 feet in length and not exceeding 36 feet in height above the ground and to be 13 inches in width. The said bank is to erect its own building and to pay all expenses of same for the present, excepting that if Coffield & Kean desire to have openings left in the south wall of the bank building now they shall pay the extra expense of said opening.

"W. T. Coffield and A. C. Kean, as owners of the south half of lot one (1), block 164, for themselves and their heirs and assigns, hereby agree and bind themselves to pay one-half of the actual cost of the south wall whenever they shall build on their lot and join to said wall. The said payment to be made without interest, and also without deduction for deterioration of the wall by lapse of time.

"This contract to be a covenant running with the land, and in case of change of ownership on either lot the liability and privilege to pass to the assignee of either side and be performed by said assignee; the actual cost of the south wall to be ascertained by agreement of parties, when completed, or, in case of failure to agree,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to be fixed by each side selecting a practical brickmason who shall estimate the cost, and said two may select a third man to assist in making estimate and the amount when fixed in either manner shall be attached to this contract and become the amount to be paid under this contract.

The cost of said wall to be computed at the ruling price of plain brickwork such as enters into south wall at the time of the erection of wall."

The bank built a brick house on the north half of said lot, constructing the south wall of said building one half over the dividing line between the property. We are unable to ascertain from the evidence the length, height, and thickness of the south wall; the pleadings indicate that said wall is 100 feet in length, and the evidence discloses that the wall is three stories in height, constructed by said bank, and the adjoining wall thereafter attached to same is 29 feet in height of a two-story building; but the question whether the bank constructed a south wall in conformity with the contract does not seem to be raised or litigated in this cause. The appellee, petitioner for the injunction, sets up that the wall was constructed under an agreement as a party wall, and does not deny that the bank did not build the wall in accordance with said written contract.

On the 23d of February, 1893, Coffield & Kean sold their south half of said lot, conveying the same by deed to one Finkelstein, who constructed thereon the adjoining building, two stories in height and 100 feet in length, connecting to the bank's wall; and through a foreclosure sale, on account of a mortgage executed by Finkelstein, the appellee, Zundelowitz, became the possessor and owner of the building upon the south half of said lot in July, 1894, renting and enjoying the use of the property since that time.

Several years ago, just when we are unable to definitely ascertain, an agreement was made between the appellee and the bank that the latter could cut an opening into the division wall to permit egress from the bank building to appellee's building, for the use of a stairway in, or annexed to, the latter's building, entered from a public street of said city; the bank cut an arched opening in the wall for that purpose, but there is some variation in the testimony as to the consideration and terms of said agreement, especially in regard to the use of the toilet in the bank's building by appellee's tenants, which he asserts the bank granted, and which the bank denies; and, further, it is contradicted whether it was agreed that the opening would be closed by the bank at any time upon appellee's demand, asserted by appellee that it was so agreed, and also denied by the appellant.

The appellee filed this suit for injunction, praying that the appellant bank be required to close said opening, or that all of said appellants be restrained from interfering with him in closing same, which latter relief, upon final hearing, was granted by the trial court.

[1] The trial court filed conclusions of fact and law 28 days after the adjournment of court, which we are unable to consider as an aid in the determination of this cause; legally they are not a part of the record. We are remitted to the judgment, and any predicable theory upon the statement of facts in aid of the decree, in determining the cause.

The evidence discloses that prior to the institution of the suit the bank refused appellee's demand to close the opening, or to permit him to close it, refusing the latter's right to do so, with assertions carrying the meaning that an attempted performance toward that end would be resisted.

[2] When Finkelstein, the grantee of Coffield & Kean (the latter having made the party wall contract), constructed the adjoining building and joined to the division wall, no demand was made by the bank, at least the evidence does not exhibit any, of payment for any proportionate interest in said wall used by said Finkelstein; but about two years after Zundelowitz purchased the property at foreclosure sale the bank notified him of the party wall contract, and which was of record, asserting a claim, and demanding payment, for an interest in the wall, which was refused by appellee. He testified:

"I just told them I didn't owe anything, and was not going to pay it. I told Mr. Huff at the time I went to see him that I was claiming it [meaning the wall]."

Appellee testified that the cashier of the bank upon this ocasion had informed him that the bank had a claim against him in regard to the wall, and that he immediately went to the president, Huff, and discussed the matter with him, and asserts that the latter stated, "Don't mind, there is nothing to it." He also testified, "I have been claiming a half interest in that wall at all times since I have been occupying the building," and which period has been about 18 years to the time of the institution of this suit, and about 16 years since his repudiation of the party wall agreement to the time said suit was filed.

The bank's main proposition in this cause is as follows:

"The court erred in granting injunction herein, for that the plaintiff wholly failed to show any title or interest in the wall in which opening is ordered closed, or any right or easement therein; the proof showing that such wall had been builded under an agreement with defendant bank and those under whom plaintiff claims, by which plaintiff was bound to pay the cost of the wall. Plaintiff had never paid the charge, and could own no right until he did pay."

[3, 4] The evidence clearly discloses that this very covenant, if it exists, was repudiated by appellee upon demand made by the bank that he pay for the wall, and by virtue of such repudiation necessarily carrying

with it an adverse assertion to the bank of an easement in the wall, for the purpose of supporting the building owned and used by him. This adverse possession continued for about 16 years before the institution of the suit. A vendor may retain the title to land as against the vendee, and the vendee may not obtain the title until he pays for the land, and his possession of the same is ordinarily not adverse; but, when repudiated by the vendee, the adverse possession begins to run from the time of the repudiation, and, notwithstanding the title of the vendor, the vendee may ripen his adverse possession into a title by limitation. Smith et al. v. Pate et al., 91 Tex. 596, 45 S. W. 6. The easement to the adjoining building by the party wall is the right of support of said wall for that purpose. Of course appellant asserts title to the whole wall, and concedes to appellee the land upon which the half of the wall is a fixture. There are numerous authorities announcing the proposition that 20 years' prescription is applicable where the use and possession of the wall as a support is adverse and enjoyed for that length of time.

The constant trend of the authorities in this state is that the 10-year statute of limitations as to an easement in land is applicable. Rippetoe v. Low, 1 Posey, Unrep. Cas. 482; Shepard v. Galveston, H. & H. R. Co., 2 Tex. Civ. App. 565, 22 S. W. 268; Capps et ux. v. Texas & Pacific Ry. Co., 21 Tex. Civ. App. 84, 50 S. W. 643; Railway Company v. Caldwell, 102 S. W. 461; Railway Company v. Cuneo, 47 Tex. Civ. App. 622, 108 S. W. 714.

[5] Appellants, however, say that it is equitable that appellee should pay one-half of the cost of the wall as a prerequisite to the relief to close the opening, citing a line of cases illustrated by Goldfrank & Co. v. Young, 64 Tex. 432, which is to the effect that the execution of a power of sale in a deed of trust, outside of court, could not be enjoined without tendering the amount of the debt secured by the mortgage, though the debt was barred by the statute of limitation. It is not necessary to review that case; the reading of it discloses the grounds and principles upon which the same is bottomed, drawing distinctions between a debt barred by the statute of limitations, which affects the remedy, and other actions affecting other rights. In this case, assuming argumentatively every other contention made by appellant, however, if the appellee acquired the title to the easement or to a half interest in the wall resting upon his land, by the ten-year statute of limitations, it is as good a title to the property as one acquired by grant, deed, or otherwise. We are not concerned, of course, with the credibility of the witnesses, but we have to impute the finding of the court that the agreement with reference to the opening of the division wall into appellee's building was agreed to in accord-

ance with appellee's testimony, and his theory of the cause. If that be true, appellant failed to comply with said agreement, and there is no assignment in this record questioning it by the statute of frauds or in any other manner, even if it could be questioned. As an original proposition, we seriously doubt whether a litigant in an injunction suit can answer the injunctive relief prayed for by his opponent by asserting that a failure of compliance with a previous agreement is a bar to equitable relief to the other party attempting to exact compliance with a subsequent agreement, which the court finds is also not complied with by the party antagonizing the relief.

We think the showing is amply sufficient for the $20 judgment in regard to the insurance, but believe, however, that the judgment against Huff and McGregor, as individuals, should not have been rendered. It is true that their language at the time demand was made to close the opening was inferential in its meaning that, if the opening was attempted to be closed, they would resist such an attempt, but it is further coupled with the statement that this would be resisted until the court adjudicated the matter. These statements were sufficient to make them proper parties to the suit; but their answer, in the nature of a disclaimer, we believe, should have precluded them thereafter as individual parties to the suit, and an injunction against them as officers and representatives of the bank, as prayed for by appellee, was sufficient.

The judgment against them as individuals for costs of the proceeding in the lower court after the filing of said answer is reversed and rendered in their favor, but ordered that the appellant bank pay all the costs of this appeal.

In all other respects the judgment is affirmed.