PORT ARTHUR RICE MILLING CO. v.
BEAUMONT RICE MILLS et al.

(Supreme Court of Texas. Feb. 14, 1912.)

1. LIMITATION OF ACTIONS (§ 43*)—ACCRUAL OF CAUSE OF ACTION—"CAUSE OF ACTION"—"ACCRUAL."

The "accrual of a cause" of action, within the statute of limitations, means the right to sue, and when one person may sue another a cause of action has accrued; a "cause of action" existing in a legal sense when there is such a mature right as may be declared on and maintained, subject only to such valid defenses by which it may be defeated.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 217–219; Dec. Dig. § 43.*

For other definitions, see Words and Phrases, vol. 1, pp. 101–103; vol. 2, pp. 1015–1019; vol. 8, p. 7598.]

2. LIMITATION OF ACTIONS (§ 100*)—CONVERSION—FRAUD—DISCOVERY.

A chattel mortgage of a rice crop covered only such land as was cultivated by the mortgagor. That certain land was cultivated by him was concealed from the mortgagee by a fraudulent scheme, whereby the land was cultivated ostensibly by others. A chattel mortgage covering the rice land was subsequently obtained by a third person, who, though a party to the fraudulent scheme, assured the mortgagee that the transaction was free from fraud. The mortgagee using due diligence discovered the fraud. *Held,* that the mortgagee's cause of action against the third person accrued on the discovery of the fraud, and was not barred by the two-year limitations running from the time of the obtaining by the third person of his mortgage and his selling the mortgaged chattels, though the statute would have run from the date of the conversion by the third person if there had been no fraud.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 480–493; Dec. Dig. § 100.*]

3. LIMITATION OF ACTIONS (§ 100*)—FRAUD.

Fraud prevents the running of limitations until it is discovered, or until, by the use of reasonable diligence, it may be discovered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 480–493; Dec. Dig. § 100.*]

4. APPEAL AND ERROR (§ 1132*)—DISPOSITION OF CASE IN SUPREME COURT.

Where the verdict rendered under proper instructions was fully supported by the evidence, and the Court of Civil Appeals erroneously reversed the judgment on a question of law, the Supreme Court, on writ of error, will reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1132.*]

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by the Port Arthur Rice Milling Company against the Beaumont Rice Mills and others. There was a judgment of the Court of Civil Appeals (141 S. W. 349) reversing a judgment for plaintiff and rendering a judgment for defendants, and plaintiff brings error. Reversed, and judgment of trial court affirmed.

D. W. Glasscock, J. V. Fleming, and Morris M. Mothner, for plaintiff in error. Taliaferro & Barry and A. D. Lipscomb, for defendants in error.

DIBRELL, J. This is a suit by Port Arthur Milling Company, filed November 22, 1907, in the district court of Jefferson county, against Beaumont Rice Mills, a partnership composed of J. E. Broussard, J. M. Hebert, L. M. Hampshire, M. S. Hampshire, E. J. Le Banc, and B. C. Hebert, and against the partners as individuals, to recover the value of the rice crop grown in 1905 on 505 acres of land, less 150 acres excepted, in the Stivers league in Jefferson county, alleged to have been converted by defendants.

In February and June, 1905, one Burge executed and delivered to plaintiff two chattel mortgages to secure money already advanced and to be advanced him by plaintiff with which to plant, grow, and harvest a rice crop for the current year. The chattel mortgages were so framed that, as between the plaintiff and the mortgagor, as they relate to the particular piece of land on which was grown the rice alleged to have been converted by defendants, they were clearly enforceable; but, on account of the description of the land to be covered by these mortgages, they were not enforceable as to third parties acting in good faith and without actual knowledge.

The land was, as matter of fact, planted and cultivated by Burge, the mortgagor, in which event it was subject to plaintiff's claim; but, in order to keep the knowledge of this fact from plaintiff, Burge had the rice crop on this piece of land cultivated in the name of one Cannon, and when Cannon died it was placed in the name of F. D. Naylor, to whom he pretended to have sublet the land with the consent of the original lessor. Burge also executed a bill of sale to Naylor for this rice crop, dated about February 1, 1905, but not filed until some time in October of that year, and Naylor, in September, 1905, executed and delivered two chattel mortgages to the Beaumont Rice Mills covering the rice land in controversy, and on October 3, 1905, conveyed by bill of sale said rice crop to W. A. Hebert in consideration that he assume the payment of $9,680, recited to be due the Beaumont Rice Mills by Naylor.

It was alleged by plaintiff, and its cause of action seems to have been based on the fact, that all of said conveyances, mortgages, and instruments were made in bad faith, and were not bona fide transactions, and were merely simulated transactions, devised and executed by the parties concerned therein for the purpose of depriving plaintiff of the property therein described, and on which plaintiff had a valid lien; that the defendants, and each of them, confederated, acted,

and conspired with the Burges, F. D. Naylor, and W. A. Hebert and other parties unknown to plaintiff, and were concerned in and advised and had knowledge of all said simulated transactions; that defendants caused the said W. A. Hebert to deliver possession of said rice crop to them for the benefit of said Burge, and to assist said Burge to defraud plaintiff thereof; that these facts were concealed from plaintiff by defendants, and the true state of affairs was not known to or discovered by plaintiff until a short time before the institution of this suit in November, 1907.

The defendants pleaded a general denial and the statute of two years limitation, alleging that the rice crop was sold and bought by defendants on or about October 27, 1905, at which time plaintiff's cause of action accrued, and then pleaded specially that they acted in good faith in taking the mortgages on the rice crop in controversy for the purpose of securing themselves in advancements made and to be made by Naylor, they being competitors with plaintiff in making advances to various rice planters in Jefferson county, and taking mortgages on the crops of rice to secure such advances; that they made an examination of the records of Jefferson county, and such facts were gathered therefrom that justified them in believing that plaintiff's mortgages did not cover the rice crop in controversy, and that they were innocent lienholders, and such other facts as made their action bona fide.

The cause was tried with a jury, and a verdict returned for plaintiff, Port Arthur Rice Milling Company, for $11,360.98. Upon appeal by defendants, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the appellants, defendants below, basing its action on the statute of limitations of two years, holding that plaintiff's cause of action accrued on October 27, 1905.

The Court of Civil Appeals puts stress upon the fact that the crop of rice in question was publicly sold and bought in by McFaddin-Wiess-Kyle Rice Milling Company, and the proceeds of such sale turned over to defendant Beaumont Rice Mills; that when this sale was made a written memorandum of sale was executed, specifying the terms and conditions upon which such sale was made, but that, "although plaintiff knew of the sale and of the fact that the rice was purchased by the McFaddin-Wiess-Kyle Rice Milling Company, it did not know of the written memorandum of sale, nor that the proceeds, by its terms, should be paid over to the Beaumont Rice Mills, but could have ascertained this fact by the exercise of ordinary diligence." In view of the pleadings and findings of fact by the Court of Civil Appeals, we do not consider it of controlling importance that plaintiff knew the rice crop raised upon the tract of land in question had been converted by defendants some time

in October or November, 1905. It may be conceded this fact was known to plaintiff; but its cause of action is based upon a different state of case. The rice, as between plaintiff and Burge, was unquestionably subject to its mortgages given by Burge, and likewise as to defendants, unless they were innocent lienholders and bona fide purchasers for value of the rice crop, without actual notice of plaintiff's equities. This, we think, is clearly shown by the record, and seems to have been the contention of defendants, as appears from their first assignment of error in the Court of Civil Appeals. It follows that, unless plaintiff could show by competent testimony that defendants had actual knowledge, independent of the recorded mortgages, that plaintiff's liens covered and embraced the rice crop in dispute, or that their claim was not based upon a valuable consideration, but founded in fraud, it had no well-grounded cause of action.

On the issue as above indicated, the Court of Civil Appeals finds the following facts: "The testimony in the record abundantly shows that the 500-acre crop south of the railroad, in controversy, was farmed and owned by Burge, and that under the contract between Burge and the plaintiff all of it, except 150 acres, was subject to the latter's mortgage. Burge, however, with the fraudulent intent of deceiving plaintiff as to the ownership, placed the crop in the name of Cannon, one of his tenants, and, Cannon having died in the early part of the season, Burge then placed the crop in the name of one Naylor, and later in the season the crop was transferred by Naylor to one W. A. Hebert. All these transactions were simulated and fraudulent, and appellant so admits. The record further justifies the conclusion, and we so find, that the appellants knew the 500 acres were farmed by Burge, and knew that the various transfers of said crop above referred to were simulated and fictitious, and that the crop was subject to plaintiff's mortgages."

The Court of Civil Appeals, after a further finding of fact that plaintiff knew the crop of rice in controversy was farmed and owned by Burge, and therefore subject to its mortgages, proceeded to dispose of the question of law involved wholly without reference to the important and controlling fact whether or not plaintiff knew, or by the exercise of proper diligence might have known, of defendants' knowledge of Burge's fraud in conjunction with Cannon, Naylor, and W. A. Hebert and their participation therein, as disclosed by the findings of said court.

Plaintiff in error, the Port Arthur Rice Milling Company, in its petition for writ of error in this court, makes the following assignment of error: "The Court of Civil Appeals erred in its conclusion of law to the effect, in substance, that plaintiff's cause of action herein is one of simple or ordinary conversion, and therefore complete, and accrued when plaintiff knew the crop was sub-

ject to its mortgage, and knew of the sale of the crop by W. A. Hebert to the McFaddin Mills, and knew, or was chargeable by law with the knowledge, that defendants received the proceeds, and in holding thereon that plaintiff's cause of action was barred by limitation, and that the running of the statute was not postponed, and in reversing and rendering this cause against plaintiff, because the basis of plaintiff's cause of action herein is the fraud perpetrated by defendants—not merely the technical or legal fraud involved in ordinary conversion, not merely that defendants received and applied to their own use proceeds of rice, subject to plaintiff's mortgages, and thereby converted same, but the actual fraud of defendants, in that defendants knew that the crop was farmed by Burge, and was subject to plaintiff's mortgages, defendants knew that the transfers and all the transactions by which the crop was placed in the actual possession of and ostensibly owned by Naylor and later by Hebert were simulated, fictitious, and fraudulent, and defendants with this knowledge, but acting in ostensible ignorance thereof and in ostensible good faith, took pretended and simulated mortgages to themselves from Naylor and Hebert to secure false notes and accounts representing fictitious advances and indebtedness on the crop, fair on their face and pretended by defendants to be genuine, under color of which, as ostensible innocent third parties with equity superior to the rights of plaintiff, defendants obtained the proceeds of the crop—because, since under the description in plaintiff's mortgage the crop was not subject thereto if farmed by 'other than Burge,' if the defendants, as innocent third parties, finding Naylor and Hebert in actual possession of the crop and notoriously claiming same, had made bona fide advances to them on the crop and taken mortgages from them in good faith, and in pursuance thereof received from them the proceeds of the crop in satisfaction thereof, all in ignorance of the fact that Burge really farmed the crop, and innocent of any connection with the fraud, and guiltless of any fraud' of their own—in other words, if defendants had in fact acted as they pretended to act—the equities of defendants would in fact have been, as they claimed, superior to the rights of plaintiff, and plaintiff had no cause of action against defendants, even if plaintiff knew of the sale and had known that defendants received the proceeds, and also knew that Burge farmed the crop, and therefore that, as between it and Burge and those having knowledge of that fact, the crop .was subject to its mortgage. And the Court of Civil Appeals has misconceived plaintiff's cause of action in this respect, and erred therein, and in overruling this point as presented in different forms in the first, second, third, and fourth grounds of error specified in plaintiff's application for rehearing."

[1] We think this assignment well grounded and clearly sustained by both the facts as found by the Court of Civil Appeals and the law as applicable thereto. The question of law arises out of the application of the statute of limitation to the facts ascertained, as they relate to the cause of action declared upon by plaintiff in error. In determining this issue, it is necessary to first ascertain what plaintiff's cause of action was as sued upon, and when such cause of action accrued to it. The learned judge of the Court of Civil Appeals seems to have been of opinion that, as soon as the rice crop in dispute was appropriated by defendants with plaintiff's knowledge, plaintiff's cause of action for conversion accrued, and limitation began to run from that date. This position is correct, generally speaking, when not attended with the existence of any material circumstances or facts that would deny the complainant the right to maintain his cause of action in addition to the right to institute suit upon it. An error in this case seems to have arisen out of a want of a full and accurate conception of what a cause of action really imports in its legal sense. Before it can be said that a cause of action exists in a legal sense, there must be such a mature right as may be declared upon and maintained, subject only to such valid defenses by which it may be defeated. In 25 Cyc. 1065, the rule is laid down as follows: " 'The accrual of the cause of action' means the right to *institute* and *maintain* a suit; and whenever one person may sue another a cause of action has accrued, and the statute begins to run." Again, in 25 Cyc. 1065, it is said: "The statute of limitation begins to run from the time when a complete cause of action accrued—that is, when a suit may be maintained—and not until that time."

[2] The application of this doctrine may be made plain by the following illustration: A. gives a chattel mortgage to B. on a horse, to secure a debt. B. fails to file the mortgage with the proper officer, as required by law. C. buys the horse from A. ostensibly for value and without notice of B.'s lien. As a matter of fact, C. has received and appropriated to his use property on which B. had a valid and subsisting lien, yet it would not be contended that B. had a cause of action against C. On the other hand, should it turn out that the purchase of the mortgaged property by C. was simulated and fraudulent and without value, and with full knowledge of B.'s chattel mortgage, but this fact is concealed from B. by the declaration of good faith on the part of C. until after the lapse of two years from the time of the simulated purchase, would it be contended that B. could not institute and maintain his suit for the conversion of the mortgaged property after the lapse of two years from the time C. appropriated the mortgaged property, provided he did not discover the fraud, and could not have done so by the use of ordinary

diligence, until after the period of two years had passed? We do not think a contrary contention could be successfully made upon any ground, legal or equitable, supported by authority or principle. Should it be asked why B. would not have a cause of action against C. at the time C. purchased the mortgaged property, we answer: Because if C. was acting in good faith in making his purchase, as B. was bound to assume in view of the protestation of innocence, he had a legal right to make the purchase, and having such right no cause of action accrued against him. After the discovery of the fraud, the mortgagee's cause of action was one for fraud and conversion combined, and would not be defeated by the running of the statute of limitation.

The case at bar is precisely parallel with and analogous to the case illustrated. Plaintiff's mortgages were so written as to cover such rice land as was cultivated by Burge on the south of a certain line in a certain survey, and to embrace no land cultivated by any other person than Burge, and, while the land in dispute was cultivated by Burge, this fact was concealed by a fraudulent scheme; the land being cultivated ostensibly by others, and in the name of others. The real fact relating to the cultivation and ownership of the land in dispute was ostensibly concealed from defendants, who, in ostensible good faith, accepted liens on the rice crop so mortgaged to plaintiff. Rights accruing under these circumstances, if made in good faith, were superior to plaintiff's mortgages. When defendants purchased and appropriated the rice crop in controversy in October, 1905, under mortgages, transfers, and bills of sale having all the indicia of honesty and good faith, plaintiff assumed, and was bound to assume in the light of the declarations of good faith on the part of defendants, that the transactions, in so far as defendants were concerned, were fair and free from the taint of fraud; and hence at that time, notwithstanding defendants had received and appropriated with plaintiff's knowledge the rice crop so subject to its mortgages, it had no cause of action against defendants. But having used due diligence to ascertain the true status of affairs in relation to its rights, after the lapse of two years, the fraud and duplicity of defendants were revealed to plaintiff by one of the participants in the fraudulent conspiracy of which defendants had full knowledge, and in which they participated, as has been hereinbefore indicated. Plaintiff, not having had knowledge of defendants' guilty knowledge of and participation in the scheme to defraud plaintiff in its rights, for the first time had a cause of action against defendants upon the discovery of such fraud.

[3] This doctrine in its practical application, in so far as it relates to the case at bar, is nothing more in effect than the assertion of the doctrine that fraud, undiscovered, suspends the running of the statute of limitation. In the absence of fraud, the statute would have begun to run from the date of the conversion of the rice upon which plaintiff had a mortgage. But it is a definitely and well settled rule in this state that fraud prevents the running of the statute of limitation until it is discovered, or until, by the use of reasonable diligence, it might have been discovered. Cooper v. Lee, 75 Tex. 121, 12 S. W. 483; Kennedy v. Baker, 59 Tex. 160; Heirs of Brown v. Brown, 61 Tex. 49; Munson v. Hollowell, 26 Tex. 486, 84 Am. Dec. 582; Ripley v. Withee, 27 Tex. 14; Bremond v. McLean, 45 Tex. 11.

[4] It appears from the record in this case that the learned trial judge, in a most careful and elaborate charge, submitted to the jury the question of defendants' fraud and its concealment from the knowledge of plaintiff, and charged them that if plaintiff had knowledge of such fraud as was alleged by it, or, by the exercise of reasonable diligence, might have discovered such fraud in time to have brought its suit before the lapse of two years, to find for defendants. The cause was fairly tried, and the jury, acting within the performance of their duty, found for the plaintiff, and their verdict being fully supported in every particular by the testimony in the record, and also fully supported by the findings of the material facts by the Court of Civil Appeals, and the judgment having been rendered by the Court of Civil Appeals on a question of law arising out of the application of the facts to the law, we see no reason why, in reversing the judgment of the Court of Civil Appeals, the judgment of the lower court should not be affirmed.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court affirmed.