**MOERBE et al. v. BECKMANN.**

**No. 8839.**

Court of Civil Appeals of Texas. Austin.

Oct. 11, 1939.

Rehearing Denied Nov. 1, 1939.

C. C. Jopling, of LaGrange, for appellants.

Fred L. Blundell, of Lockhart, and Jno. A. Kerr, Jr., of LaGrange, for appellee.

McCLENDON, Chief Justice.

Suit by Dr. Beckmann against Moerbe and wife upon six of a series of fourteen promissory notes, and against the Moerbes and Giese and Walthers to foreclose a trust deed securing the notes upon 328 acres of land. The series of notes and the trust deed securing them were executed March 27, 1924, by Moerbe and wife to the Falkes, who transferred the six in suit (the others meanwhile having been paid) to Dr. Beckmann, February 14, 1926, the trust deed and transfer being placed of record promptly after execution. March 18, 1929, Giese purchased from the Moerbes 8½ acres of the land for $178.50 cash; and on February 16, 1929, Walthers purchased of the Moerbes 6½ acres for $160 cash. The deeds evidencing these conveyances made no reference to the trust deed, and contained general warranties of title. They were recorded shortly after execution, and the grantees went into immediate possession of the respective tracts, fenced them and have continuously held possession of them, paying the taxes thereon each year before they became delinquent. Neither

grantee had his title examined, nor had any knowledge nor notice of the existence of the trust deed, except that imputed by the record, until some time later. Note No. 9 (the first to mature of those transferred) was due on or before January 1, 1933. Thereafter Dr. Beckmann sued the Moerbes on the notes and to foreclose the trust deed lien, recovering judgment accordingly on May 29, 1934. On July 1, 1935, the Moerbes conveyed the land to Dr. Beckmann by general warranty deed, for the recited consideration of $10 cash, "and the complete cancellation of all our indebtedness to Dr. Beckmann to date, as evidenced by notes, judgment, etc., together with interest and past interest, tax, costs, etc., paid by Dr. Beckmann." This suit was filed May 11, 1937. Giese and Walthers defended as to the asserted lien upon their respective tracts upon pleas of the three and five year statutes of limitations, Vernon's Ann.Civ.St. arts. 5507, 5509, verbal release of the lien by Dr. Beckmann, and estoppel on his part to assert it. The case was tried to a jury, and at the close of defendants' evidence the court rendered judgment for Dr. Beckmann as prayed, upon a directed verdict. Giese and Walthers have appealed.

In so far as concerns the three year statute of limitations, it is only necessary to say that this statute can not be imposed as a bar to a recorded lien. Rogers v. Smith, Tex.Civ.App., 31 S.W.2d 871.

As to the five year statute the record shows that from 1929 to 1937 Giese and Walthers had possession of and paid taxes on the land under registered deeds, fully supporting the statute in these respects. The only issue here is whether the evidence was sufficient to support a finding that such possession was adverse to Dr. Beckmann as the holder of a recorded trust deed lien, no note secured by which became due until 1933, less than five years before the suit was filed.

Appellants contend that their possession became adverse as to Dr. Beckmann not later than 1930 by reason of the fact that upon learning of the existence of the trust deed they repudiated it and communicated that fact to Dr. Beckmann. The evidence upon this point will be considered later. For the present we assume, arguendo, that it was to the effect stated. The question thus presented is whether the vendee of a mortgagor can by repudiating the mortgage lien render his possession adverse to the holder of such lien prior to the maturity date of the mortgage note.

In this state the mortgagee of land acquires no title thereto by virtue of the mortgage, but merely holds a lien thereon to secure his debt. He is not entitled to possession of the land and can maintain no possessory action therefor. Other than to foreclose his lien, whether by suit or under a power, under the terms of his mortgage, he can maintain no action regarding the land except such as may be essential to protect his security. These principles are so generally recognized as not to require specific citation of authority. They have been recently restated in an opinion by Mr. Justice Critz. Carroll v. Edmondson, Tex.Com.App., 41 S.W.2d 64. These rules apply to vendor's liens as well as to those secured by trust deeds and other forms of mortgage.

It is likewise elementary that the possession of the mortgagor is in subordination to the rights of the mortgagee. His relation to the mortgaged property is analogous to that of trustee for the mortgagee. Also elementary is the proposition that his vendees, with notice, actual or constructive, of the mortgage, acquire no rights in the mortgaged property other than those held by the mortgagor, and occupy the same relation to the property as the mortgagor. The mortgagor and his vendees with such notice, having the right of possession and the obligation to pay the taxes, such possession and payment of taxes are entirely consistent with the rights of the mortgagee and are therefore in no sense adverse as to him. And since he can assert no possessory rights in the property, and his only cause of action in regard to it is foreclosure, which cause of action does not accrue until his debt matures, it would seem to follow that the mortgagor and his vendees with notice are powerless, by mere repudiation, to render their possession adverse as to him prior to the date of such maturity. This exact question does not appear to have been adjudicated in this state. In a case note in 1 L.R.A.,N.S., p. 1037, the author states: "Prior to maturity of the mortgage, the general rule is that the mortgagor and his grantee with notice are presumed to hold in subjection to the mortgagee's right, and not adversely, and to establish an adverse claim the evidence must be clear." See, also, in this connection 1 Am.Jur., p. 812, § 37.

It is contended by appellants, however, that the record shows that there had been default in all interest payments subsequently to 1929, and therefore Dr. Beckmann's cause of action arose by virtue of a provision in the notes for acceleration of payment on such default. This provision, however, was expressly "at the option of the holder," and there was no exercise of this option prior to the suit brought after the maturity of note No. 9 in 1933. Dr. Beckmann was not required to exercise this option, and not having done so, limitation did not begin to run until the maturity of the note. 28 Tex.Jur. p. 176, and authorities cited in note 3. Even in case of a simple contract renunciation or repudiation does not ipso facto mature the contract, but such maturity is at the option of the other party. See 10 Tex.Jur. p. 499, § 261, and 28 Id. p. 173, § 82.

In support of their claims of adverse possession, appellants cite Robertson v. Wood, 15 Tex. 1, 65 Am.Dec. 140; Smith v. Pate, 91 Tex. 596, 45 S.W. 6; Gilbough v. Runge, 99 Tex. 539, 91 S.W. 566, 122 Am.St.Rep. 659; Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582; First Nat. Bank v. Zundelowitz, Tex.Civ.App., 168 S.W. 40. An examination of these cases discloses that none of them is in point upon the question before us.

Independently of the correctness of the above holding, we do not believe the evidence sufficient to support a finding of repudiation of Dr. Beckmann's lien. We quote the testimony of Giese upon this point as copied in his brief:

"Q. Now, shortly after you bought it, did you learn that Dr. Beckmann had a lien against it? A. Yes, sir.

"Q. Did you know it before you bought it? A. No, sir."

"Q. Did you learn after this property had been conveyed to you that Dr. Beckmann was claiming a lien against the land? A. Yes, sir.

"Q. How long afterwards? A. I don't remember definitely, but shortly afterwards.

"Q. What did you do after you learned about this lien? A. Well, I discussed it with Dr. Beckmann, and told him that I had bought a piece of land from Mr. Moerbe and wife and that I had learned that he had this lien against it. I don't remember exactly what was said, but I asked him what he was going to do about it, and he said he didn't know. He finally said he thought he had enough land without that, and that it was all right; that is the way I understood it."

"Q. Did you tell him that you had bought this land, paid for it, and had it under fence? A. Yes, sir.

"Q. Did you have any conversation with him after that about it? A. Yes, sir.

"Q. Did he know you had it under fence? A. Yes, sir, he has been at my place.

"Q. Did any discussion come up about that piece of land? A. Yes, sir.

"Q. State whether or not you told him at that time that you were claiming this land under your deed? A. Yes, sir.

"Q. You told Dr. Beckmann that? A. Yes, sir.

"Q. State whether or not you told Dr. Beckmann as early as 1930 that you had bought that land and had it under fence and was claiming it under a deed? A. Yes, sir.

"Q. You do know though that Dr. Beckmann had actual notice that you had bought and were claiming this land prior to 1930? A. Yes, sir.

"Q. And he knew that you had it under fence, and were using it prior to 1930? A. Yes, sir."

The testimony of Walthers is not essentially different from that of Giese. This evidence does not show repudiation of the lien. On the contrary, Giese and Walthers appear to have recognized that the lien was valid, and relied upon a statement or promise of Dr. Beckmann that he would not enforce it as to them, because he felt that his other security was ample.

Appellants' claim of a verbal release of the lien is predicated upon the statement by Dr. Beckmann that he would not enforce his lien as to the tracts they had bought. This evidence was excluded on the ground that it was in contravention of the statute of frauds, Vernon's Ann.Civ. St. art. 3995. This ruling was clearly erroneous. A release of a lien upon real estate does not come within the statute of frauds, and may be proved by parol. Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582; McKinley v. Wilson, Tex.Civ.App., 96 S.W. 112; Givens v. Featherstone, Tex. Civ.App., 12 S.W.2d 613; 20 Tex.Jur. p. 278, § 69 and notes 12 and 13. However, the evidence was clearly inadmissible upon the ground that the asserted release was not supported by any consideration what-

ever. 36 Tex.Jur. p. 801, § 6, and authorities cited in note 10.

Appellants' pleas of estoppel are predicated upon this verbal statement of Dr. Beckmann that he would not enforce the lien as to them, their reliance thereon, and the fact that at that time Moerbe was solvent but had since become insolvent. In other words, that they were lulled into security by Dr. Beckmann's statement and thereby lost their opportunity to recover from Moerbe on their warranties of title. The evidence was excluded, as already stated, upon the ground that it contravened the statute of frauds. In excepting to this ruling appellants merely stated that they would show that they relied upon it. There was no proof, or statement that they could prove, that Moerbe was solvent then or that he had since become insolvent. Such facts were essential to the pleas of estoppel. A bill of exceptions to the exclusion of testimony must show at least what was expected to be shown by the witness. 3 Tex.Jur. pp. 470–472, and authorities cited in note 20, p. 471, and note 1, p. 472.

The trial court's judgment is affirmed. Affirmed.