A. C. ALEXANDER, Appellant,

v.

LING–TEMCO–VOUGHT, INC., Appellee.

No. 7710.

Court of Civil Appeals of Texas.

Texarkana.

May 24, 1966.

Rehearing Denied May 24, 1966.

Don W. Davis, Irion, Cain, Cocke & Magee, Dallas, for appellant.

Harold Hoffman, Wynne, Jaffe & Tinsley, Dallas, for appellee.

CHADICK, Chief Justice.

This litigation was initiated by appellant, A. C. Alexander, a plaintiff in a declaratory judgment action to determine ownership of a house trailer; by cross-action appellee, Ling-Temco-Vought, Inc., (successor in interest to M. System, Inc., as a result of a corporate merger) sued Alexander and Pioneer Finance Company to establish and quiet legal and equitable title to the trailer, for possession thereof, and alternatively, to establish a first lien thereon securing a promissory note for its purchase price. Summary judgment was rendered vesting legal and equitable title in Ling-Temco-Vought, Inc., etc. Alexander alone has perfected an appeal. The judgment of the trial court is modified and affirmed.

M. System, Inc., manufactured the subject Ranchero house trailer, serial RN 55–27, in its Texarkana, Texas, plant and at such place on November 16, 1961, sold and delivered possession of the trailer to Stevens Trailer Sales, Inc., a dealer whose place of business was located in Atlanta, Georgia. The sales transaction, in the part entirely evidenced by written instruments, is shown by (1) a Conditional Sales Contract dated November 16, 1961, executed and delivered as to both parties, wherein it is agreed that the "contract, the note given in connection therewith, and the formalities of execution * * * shall be a contract of and construed pursuant to the laws" of the State of Georgia where the instrument provided the trailer would be located; (2) a promissory note dated November 16, 1961, executed by Stevens Trailer Sales, Inc., and delivered to M. System, Inc., in the sum of $4,131.00 payable 30 days from date, or on demand at the holder's option. The Conditional Sales Contract by express terms retained in the manufacturer the title to the house trailer until the purchase price evidenced by the promissory note was paid.

There appears to have been a collateral parol agreement made at the same time and as a part of the same transaction the Conditional Sales Contract referred to. Involved in the parol agreement are (1) a Bill of Sale and (2) a Manufacturer's Statement of Origin of a Motor Vehicle, hereafter referred to as a Manufacturer's Certificate. At completion of the sales transaction M. System, Inc., intentionally withheld delivery of these two instruments. The agreement of the parties concerning the instruments, according to the uncontroverted affidavit filed by the appellee, was that the manufacturers would retain possession of the Bill of Sale and the Manufacturer's Certificate until Stevens Trailer Sales, Inc., made full payment of the trailer's $4,131.00 purchase price.

Stevens Trailer Sales, Inc., sold the trailer to Kenneth E. Smith at Leesville, Louisiana, on January 23, 1962. This sale transaction embraced a trade-in, a cash payment, and a note for deferred payments. Stevens took a mortgage on the trailer securing the note from Smith for the credit part of the purchase price and assigned the note and mortgage to Pioneer Finance Company. Thereafter on July 26, 1962, appellant Alexander purchased the trailer from Smith, paying $100.00 for Smith's equity and assumed payment of an unpaid balance of $6,890.17 then payable to Pioneer Finance Company. Prior to suit appellant Alexander made monthly payments to the finance company totaling $1,046.76. At the time of purchase Alexander's title investigation disclosed to him the existence of Pioneer Finance Company's mortgage lien and the indebtedness it secured; his affidavit says he found "no other liens, claims or rights outstanding in anyone other than

the owner, Kenneth E. Smith". Alexander made application for a Louisiana title certificate but was unsuccessful in securing it. He was first advised Ling-Temco-Vought Inc., asserted some claim or interest in the trailer in October or November, 1963.

The rights and obligations of the parties will be reviewed and ascertained as though the entire transaction occurred in the State of Texas and subject to its laws; the effect, if any, of Georgia or Louisiana law will then be considered. Terms, such as "first sale", "subsequent sale", "motor vehicle", etc., defined in the Certificate of Title Act, Art. 1436–1, § 1 et seq., Vernon's Ann.Texas P.C., are used in the sense of their statutory definition throughout this opinion.

■ The Certificate of Title Act is a statute having special application to motor vehicles, which term includes house trailers; Sec. 41 of the Act declares: "No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of any written instrument by the transferee." The Conditional Sales Contract mentioned above created a chattel mortgage lien. Art. 5489, Vernon's Ann.Tex.Civ.St., in part says: "All reservations of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages * * *."[1] M. System, Inc.'s sale of the trailer house to Stevens Trailers Inc., is a first sale, and the lien provisions of Sec. 41 of the Act are clearly applicable to the transfer. The lien created by the Conditional Sales Contract was valid and subject to preservation by notation thereof

on the manufacturer's certificate. Motor Inv. Co. v. Knox City (1943), 141 Tex. 530, 174 S.W.2d 482 at page 486. Motor Inv. Co. v. City of Hamlin (1944), 142 Tex. 486, 179 S.W.2d 278. The facts developed reflect that M. System, Inc., retained the Bill of Sale and the Manufacturer's Certificate without exhibiting them to anyone outside of company personnel handling such matters from the time of sale until suit was filed. No notation of a lien was ever made upon the Manufacturer's Certificate.

■ The preservation and priority of liens on motor vehicles is governed by the Certificate of Title Act. The Act's provisions superseded inconsistent provisions of the chattel mortgage registration laws in this field. Commercial Credit Co. v. American Mfg. Co. (Tex.Civ.App.), 155 S.W. 2d 834, writ ref.; Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843; "Automobiles", 7 T.J.2d 396, Sec. 71. While the cases last cited authoritatively determined the Act's primacy where certificates of title are concerned, the same conclusion with respect to manufacturer's certificates is not so pointedly settled, but there can be little doubt of it. The emphasized language from Motor Investment Co. v. Knox City, supra clearly recognizes a similar predominance in manufacturer's certificates, to-wit:

"It is true that Section 41 provides that no lien shall be valid on any motor vehicle unless there is noted on the manufacturer's certificate certain evidence of the existence of such a lien, and, by implication at least, *such statute charges purchasers with notice of such a lien if it is so noted on the certificate. For this reason it is necessary for purchasers, in order to protect themselves against any outstanding liens shown on the certificate, to obtain such certificate before buy-*

---

1. The article also provides generally that when possession of a chattel is delivered to the vendee the mortgage lien created by reservation of the title shall be void as to creditors and bona fide purchasers, unless such reservation be in writing and registered as required of chattel mort-

gages, and then provides that the article shall not be construed to contravene the landlord and tenant law; however the applications of these provisions to house trailers has been superseded by the Certificate of Title Act as shown hereafter.

*ing the vehicle;* but the mere failure to obtain such a certificate on a first sale does not invalidate the sale, particularly where, as in this case, no evidence of any lien had been noted on the certificate at the time of the sale." (Emphasis added).

See also Motor Inv. Co. v. City of Hamlin, supra. This construction is in harmony with the purposes of the Act and necessarily will be followed in this case.

■ The lien of a lender having exclusive physical possession of a certificate of title is superior to the equities of subsequent purchasers or lien holders, although the lien is not noted on the certificate as directed in the Certificate of Title Act, when the subsequent sale transaction is not influenced by the omission of the lien notation from the certificate. Associates Investment Co. v. National City Bank of Waco (Tex.Civ.App.1950), 231 S.W.2d 661, no writ; First State Bank of Corpus Christi v. H. Austin Motors (Tex.Civ.App.1958), 315 S.W.2d 390, wr. ref.; Ballard v. Associates Investment Co. (Tex.Civ.App.1963), 368 S.W.2d 232, wr. ref., n. r. e.; Southwestern Investment Co. v. American Nat. Bank of Amarillo (Tex.Civ.App.1963), 374 S.W.2d 318, wr. ref., n. r. e.; Clade v. National City Bank of Waco (Tex.Civ.App. 1950), 229 S.W.2d 815, wr. ref., n. r. e. The facts of this case do not show that M. System Inc.'s failure to note its lien on the manufacturer's certificate or the omission of the notation played any part in, influenced or had a bearing upon the subsequent sales transactions between Stevens Trailer Sales Inc., and Smith or Smith's sale to Alexander. The reasoning of the certificate of title cases cited leads to a similar conclusion that the Conditional Sales Contract lien should not be regarded as waived or forfeited by omission of a notation thereof on the manufacturer's certificate which M. System, Inc., retained in possession at all relevant times and never exhibited to Smith or Alexander. In Motor Investment Co. v. Knox City, supra, the original Manufacturer's Certificate was delivered to the dealer without a notation of a lien upon it, and the dealer was permitted to and did exhibit it to the purchaser, Knox City. A fraudulently obtained duplicate Manufacturer's Certificate issued after sale to Knox City, bore a notation of a lien securing indebtedness contracted after Knox City purchased the vehicle. These facts decisively distinguish the present from that case.

■ Appellant Alexander claims title to the trailer house as an innocent purchaser for value. This claim is based in part upon a contention that the law of Georgia governs the transaction. The proposition is not sustained by the record. Earlier it was mentioned that the Conditional Sales Contract between M. System, Inc., and Stevens Trailer Sales, Inc., provided that the instrument was to be deemed a Georgia contract and construed in conformity with the laws of that state. Such provision is an effort to impart to the agreement the attributes and effect of a contract made and executed in the State of Georgia. The evidence is uncontradicted that the trailer house was located in Texas at the time the contract was consummated in Texas. Also, it is shown that the trailer was at Leesville, Louisiana, when Stevens Trailer Sales, Inc., sold it to Kenneth E. Smith, and Smith resold to Alexander. There is no evidence the trailer house reached the State of Georgia after removal from Texas. The situation presented by the record is analogous to that existing when a mortgage is executed in one jurisdiction on property in another jurisdiction. "Re-statement, Conflict of Laws," § 265 espouses the application of the following rule in such instances, to-wit: "The validity and effect of a mortgage of a chattel are determined by the law of the state where the chattel is at the time when the mortgage is executed." See also "Chattel Mortgages", 12 T.J.2d 7, § 2; 15 Am.J.2d 21, § 17, and 14 C.J.S. Chattel Mortgages § 14, p. 606. In this instance the State of Georgia has not had actual jurisdictional contact with the property or the contract or the parties to this litigation; the absence

of such contacts strengthens the reason for concluding that the law of the situs governs. It follows that Georgia law does not govern the transaction, and such law can have no bearing on Alexander's standing as an innocent purchaser for value. Further consideration of the question of innocent purchaser and the complications incident to the trailer being in the State of Louisiana when it was sold to Alexander will next be noticed.

■ The trial court was not requested to take judicial notice of the law of Louisiana, and such law was not pled nor proved, so it must be presumed that Louisiana law is identical with Texas law having application to the case. Milner v. Schaefer (Tex.Civ.App.1948), 211 S.W.2d 600, wr. ref.; Kansas City Title Ins. Co. v. Butler (Tex.Civ.App.1954), 265 S.W.2d 154, wr. ref., n. r. e.; Sanders v. Treend (Tex.Civ.App.1954), 266 S.W.2d 235, wr. ref., n. r. e.; Ogletree v. Crates (Tex.Sup. Ct.1963), 363 S.W.2d 431. Since disposition of the appeal does not require it, for brevity's sake, the sale of the trailer by Stevens Trailer Sales, Inc., to Smith at Leesville, Louisiana, will be disregarded in the further consideration of the innocent purchaser question. The facts that have been recited show that the sale of the trailer by Smith to Alexander did not, and could not, comply with the requirements of the Texas Certificate of Title Act, §§ 8, 27, 33, 51 and 52.[2] This evidence shows Alexander bought the trailer in a sale rendered void by § 53 of the Act. He is not an innocent purchaser under applicable Texas law. Guinn v. Loky (1952), 151 Tex. 260, 249 S.W.2d 185; "Automobiles", 7 T.J.2d 393, § 70.

■ Associated with the innocent purchaser phase of the case is Alexander's claim that the lien of the Conditional Sales Contract was waived. The agreement provided that the trailer would be located at Stevens Trailer Sales, Inc.'s address in Atlanta, Georgia, and not removed therefrom without the written consent of M. System, Inc. It also authorized Stevens Trailer Sales, Inc., to display the house trailer at its place of business, " * * * for resale for cash only, provided that when a sale is made all of the proceeds of said sale, whether in cash or in kind, which shall not be less than the deferred balance above indicated, shall be received by the buyer in trust for the seller or assigns and shall be immediately transferred by the buyer to the seller, or assigns." Alexander construes the quoted language as permission for Stevens Trailer Sales, Inc., to transfer the trailer to a buyer, in this instance to Kenneth E. Smith, free and clear of the lien and to substitute the proceeds of that transaction for the vehicle. Whether or not this provision should be given Alexander's construction need not be decided because there was not a substantial compliance with the condition set up. The trailer was sold partly for cash, partly trade, and partly for deferred payments not in Atlanta, Georgia, but in Leesville, Louisiana. The sale by Stevens Trailer Sales, Inc., to Smith violated the condition prerequisite to permission. The circumstances do not show a waiver of the lien. Highland Park State Bank v. Continental Nat. Bank of Fort Worth (Tex.Civ. App.1957), 300 S.W.2d 304, wr. ref., n. r. e.

■ Alexander also asserts title by operation of the two year statute of limitations, Art. 5526. Ling-Temco-Vought, Inc., sued to establish its title or an enforceable lien securing a debt, both evidenced by instruments in writing. The suit was instituted less than four years after the maturity date of the indebtedness. The four year statute of limitation, Art. 5527, applies to the action. The suit to establish a lien is not barred. Graham v. Leto (Tex.Civ. App.1937), 103 S.W.2d 1031, wr. dism.; Liquid Carbonic Co. of Texas v. Logan (Tex.Civ.App.1935), 79 S.W.2d 632, no

2. To avoid lengthening this opinion reference is made to Art. 1436–1, Vernon's Penal Code for the text of these and other sections of the Act which may be mentioned in this opinion.

writ; Jolly v. Fidelity Union Trust Co. (Tex.Com.App.1928), 118 Tex. 58, 10 S.W. 2d 539. A mortgagee may follow and subject mortgaged property, in the hands of one who has converted it, to the purposes of the mortgage at any time before the secured indebtedness is barred by limitation. "Chattel Mortgages", 15 Am.Jur.2d 328, § 159.

■ Appellant counters the appellee's rights under the mortgage with the argument that he is in "the position of a converter, albeit one whose good faith is not challenged;" and insists that he may be sued, if at all, for conversion, a tort barred by the two year statute of limitation. He relies on Art. 5526, the two year statute of limitation as a bar to any action against him, and cites Port Arthur Rice Milling Company v. Beaumont Rice Mills (1912), 105 Tex. 514, 143 S.W. 926, in support of his argument. He cites no authority that limits the appellee's redress to a suit for conversion. The mortgage instrument, the Conditional Sales Contract, placed possession in the mortgagor, and gave mortgagee no present right of possession, such right maturing, if at all, upon default in payment. The mortgagor can not be held to know property is being claimed and possessed in hostility to the lien unless the possessor acts to bring his adverse claim and possession to the attention of the lien holder. The evidence does not show a use or claim of ownership by Alexander two years or more before suit that was inconsistent with appellee's lien or that was timely brought to appellee's notice. The general rule is stated in 2 C.J.S. Adverse Possession § 241, p. 886, where it is said:

"Possession of a chattel, with the consent or permission of the owner, however long-continued, will not give title by adverse possession; and where the possession is permissive in its inception, its character will be changed to adverse, so as to permit the running of the statutory period only when the possessor evinces a claim of ownership by some tangible act in hostility to the rights of the real owner."

No case similar to this under review has been found, but the general rule has had application by Texas courts in other situations. See Federal Electric Co. v. Johnson (Tex.Civ.App.1945), 187 S.W.2d 410, wr. dism.; Moerbe v. Beckmann (Tex.Civ.App. 1939), 132 S.W.2d 616, wr. dism., judg. cor. There is no evidence of any action on Alexander's part that visited notice on appellee that appellant was denying appellee's lien or claiming title to the trailer house adversely to appellee's lien. The appellant's contentions are overruled.

Pursuant to the conclusions reached above the judgment of the trial court as it applies between the appellant and appellee will be modified to the end that the appellee is adjudged to be the owner and holder of a valid first lien upon the trailer securing payment of a matured and unpaid promissory note in the principal amount of $4,131.00, with no bar to its foreclosure or to the exercise of all rights conferred upon it by the Conditional Sales Contract or inherent therein, and for all costs, etc.; as modified the judgment is affirmed.

The opinion filed herein on March 29, 1966, is withdrawn and the foregoing is filed in lieu of it in passing upon appellant's first motion for rehearing. Such motion is denied.

FANNING, J., concurs.

### DISSENT

DAVIS, Justice.

I dissent. The house trailer was sold by "M." System, Inc., to Stevens Trailer Sales, Inc., hereinafter referred to as Stevens, on November 16, 1961, and apparently was delivered to 2114 Piedmont Road, Atlanta, Georgia. The house trailer was then sold on January 23, 1961, by Stevens to Kenneth E. Smith. Smith executed a Chattel Mortgage in favor of Pioneer Finance Company on January 26, 1962. Pioneer Finance Company paid Stevens. The appellee is not men-

tioned in this transaction. Appellant purchased the trailer house on July 26, 1962, from Kenneth E. Smith. The appellee was not mentioned in this transaction.

The Contract of Sale provides, in part, as follows:

"3. Buyer shall not remove said property from the place of business hereinbelow described without the written consent of the Seller or assigns, nor use the same for any unlawful purpose, nor sell, encumber nor permit any liens to be incurred against the same, except as hereinafter provided: Buyer may display said property at its place of business hereinbelow described for resale for cash only, provided that when a sale is made, all of the proceeds of said sale whether in cash or in kind, which shall not be less than the deferred balance above indicated, shall be received by the Buyer in trust for the Seller or assigns and shall be immediately transferred by the Buyer to Seller or assigns. Said proceeds in form as received by Buyer on resale shall be the property of the Seller and shall not be used by the Buyer for any purpose. At any time Seller or assigns may examine the personal property herein sold, together with the books and records of the Buyer with reference to the above obligation.

" *   * .  *

"8. This contract, the note given in connection therewith, and the formalities of execution thereof including witnessing and acknowledgment shall be a contract of and construed pursuant to the laws of the state where the property shall be located, which shall be only the place of business of the dealer (Buyer) hereinbelow set forth."

The contract provided that Stevens could sell the trailer house and the money would become the property of M. System, Inc., or its assigns. The place of business of Stevens was 2114 Piedmont Road, Atlanta, Georgia.

Appellant filed a motion that the trial court take judicial notice of the laws of the State of Georgia. The motion was granted.

On the date of the Bill of Sale and Conditional Sales Contract and Note, November 16, 1961, Georgia did not have in effect a Certificate of Title Act. Art. 68-4A, Code of Georgia, took effect July 1, 1962. Statutory and case law applies to the transactions between Stevens and appellee's predecessor. Under the Georgia law, such contracts must be duly recorded. The Bill of Sale and Conditional Sales Contract was nowhere recorded, and the Conditional Sales Contract provided for the resale of the house trailer. There is no allegation or proof that the contract was recorded in Georgia, or anywhere else. There was a conversion of the house trailer when it was sold by Stevens to Smith, and there was a further conversion when it was sold by Smith to appellant. More than two years time elapsed after the sale of the house trailer to Smith and by Smith to appellant, and the only recourse that the appellee has is a suit for damages against Stevens. I think the law of Georgia is applicable. Peoples Loan & Finance Corporation of Rome v. McBurnette (1959), 100 Ga.App. 4, 110 S.E.2d 32; 47 Am.J. 57 § 863; Jewelers Investment Company, Inc. v. Elliott Addressing Machine Co. (1957), 95 Ga.App. 152, 97 S.E.2d 548; Mize v. Paschal (1949), 206 Ga. 189, 56 S.E.2d 266; Lewis v. Jackson (1960), 102 Ga.App. 573, 117 S.E.2d 209.

There was no pleading nor proof of fraud. I think that Art. 5526, V.A.C.S. is applicable. The sale of personal property to Smith and appellant was without notice of any lien whatever. They were innocent purchasers for value. There was no effort on their part to try to sell the same, and nobody was negligent except the appellee and its predecessors in title, because they had a Note that was payable 30 days after the date of sale. The appellee's Note was for the sum of $4,131.00, and was due 30 days after November 16, 1961. They did not take any action until more than two years after the property was sold. I think the following

cases are applicable: Luter v. Hutchinson (1902), 30 Tex.Civ.App. 511, 70 S.W. 1013, N.W.H.; Port Arthur Rice Milling Co. v. Beaumont Rice Mills (1912), 105 Tex. 514, 143 S.W. 926; Clevenger v. Galloway & Garrison (Tex.Civ.App.1907, W.R.), 104 S.W. 914; Ellis v. Heidrick (Tex.Civ.App. 1914, W.R. W.M.), 154 S.W.2d 293; Meyer Bros. Drug Company v. Fry (1898), Tex. Civ.App., 48 S.W. 752, N.W.H.

Smith, without any notice of the lien whatever, purchased the trailer house for a cash selling price of $6,191.34. He paid $953.34 in cash, and a trade-in allowance of $585.00. He executed a chattel mortgage to be paid off in 84 monthly installments of $87.23 each, or a total of $7,326.32. Smith sold his equity to appellant for $100.00 and the assumption of the balance due on the note. If appellant is required to pay the $4,131.00 that is claimed by the appellee, plus the $7,326.32 that is due to Pioneer Finance Company, that would be degrading. The blame for the situation that exists here is due to the action of Stevens and the negligence on the part of the appellee and its predecessor in title.

As I study the provisions of the contract it seems to me that the lien claimed by appellee was released when the property was sold by Stevens to Smith. The money that was paid to Stevens, along with the trade, by Smith and Pioneer Finance Company became the property of the appellee and its predecessor in title. The sale was made according to the contract and the money was paid to Stevens, "IN TRUST". If appellee and its predecessors in title had been diligent they could have collected from Stevens. I am a strong believer in the principle of: "That which is morally is, and of right ought to be, the law." If these principles are applied to the contract, and the action of the parties, the appellant is an innocent purchaser as far as the appellee and its predecessors in title are concerned.

I would sustain the appellant's point of error and would reverse and render the judgment in favor of the appellant.