IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00168-CR

 

Michael Dion Floyd 

a/k/a Michael D. Floyd,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 372nd District Court

Tarrant County, Texas

Trial Court No. 0894916D

 



MEMORANDUM  Opinion



 

Appellant Michael Dion
Floyd was convicted on March 4, 2005 of making a False Statement to Obtain
Property or Credit - $100,000 to $200,000 and sentenced to twenty years in
prison.  On October 25, 2002, Tarrant County detectives posed as loan personnel
at Realty Mortgage and arrested Floyd after he attempted to obtain a home loan
in the name of Michael Davis Floyd.

Prior to questioning,
officers read Floyd a document entitled “Warning to be Given Before Taking Any
Oral or Written Statement.”  As the five warnings were read to Floyd, he read
along on a copy of the document and initialed on a line alongside each
warning.  At the point that the officer read, “[i]f you are unable to employ a
la[w]yer, you have the right to have a lawyer appointed to advise you prior and
during any questioning,” Floyd asked the officer how to get a lawyer.  The
officer finished reading the warnings and then advised Floyd that he could call
a lawyer or the court would appoint a lawyer for him.  Floyd signed a waiver
contained in the same document that stated:  “I [Michael Floyd] have and do
hereby knowingly, intelligently, and voluntarily waive the above explained
rights and do make the following statement of my own free will….”  Floyd did
not request to call a lawyer or to have one appointed, and the officers
continued to question him.

In Appellant’s sole issue,
he argues that the trial court erred in admitting a videotape which recorded
the October 25, 2002 questioning as evidence against him because the officer who
read his Miranda rights “qualified” his right to counsel.

Miranda Warning

      Regardless
of whether Floyd did not receive the proper Miranda warning, the statements
made on October 25, 2002 were admissible when offered as impeachment evidence. 
See Tex. Code Crim. Proc. Ann.
art. 38.22, § 5 (Vernon 2005).  Every defendant has the right to testify in his
own behalf.  However, if a defendant
voluntarily takes the stand, he is under an obligation to speak truthfully and
accurately.  Lykins v. State, 784 S.W.2d 32, 36 (Tex. Crim. App. 1989). 
“The shield provided by Miranda cannot be
perverted into a license to use perjury by way of a defense, free from the risk
of confrontation with prior inconsistent utterances.”  Id.  By
using a defendant’s own statements against him, the prosecution does no more
than “utilize the traditional truth-testing devices of the adversary process.” 
 Id.

The October 25, 2002 videotape was admitted as impeachment
evidence.  The court instructed the jury as follows:  “this tape is admitted
solely to assist you, if it does, in assessing the weight or credibility that
you give to the Defendant’s testimony, but may not be considered for any other
purposes.”  Therefore, the trial court did not err in admitting Appellant’s
statements.  Accordingly, we overrule Appellant’s sole issue.

Conclusion








      Having overruled Floyd’s sole issue, we
affirm the trial court’s judgment.  

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed March 1, 2006

Do
not publish

[CR25]

 






in; margin-left: 0.3in; margin-right: 0.3in">§ 26.01. Promise or Agreement Must Be in Writing
      (a)  A promise or agreement described in Subsection (b) of this section is not enforceable
unless the promise or agreement, or a memorandum of it, is
 
(1)in writing; and
 
(2)signed by the person to be charged with the promise or agreement or by
someone lawfully authorized to sign for him.
 
      (b)  Subsection (a) of this section applies to:
 
***
(6)an agreement which is not to be performed within one year from the date of
making the agreement;

Tex. Bus. & Comm. Code Ann. § 26.01 (Vernon 1987).
      However, courts have crafted various exceptions to the application of the statute when
enforcement would allow the very fraud that was sought to be prevented. One exception to the
application is when one party has fully performed under the contract and the only thing
remaining is performance by the other party. Frey v. Pearson, 168 S.W.2d 886, 889 (Tex.
Civ. App.—Waco 1943, no writ). This exception has specifically been applied to an
agreement to loan money requiring payments to be made over a period greater than one year. 
Estate of Kaiser v. Gifford, 692 S.W.2d 525 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d
n.r.e.).
      Having advanced the loan proceeds, Howard had fully performed his part of the contract. 
The only performance remaining was for Suzanne to repay the obligation. Thus the statute of
frauds does not apply. Suzanne’s second issue is overruled.
STATUTE OF LIMITATIONS
      The statute of limitation for an action on debt is four years. Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(3) (Vernon Supp. 2000). When the contract calls for periodic
payments, a cause of action for nonpayment accrues at the end of each period until the contract
is complete. Townewest Homeowners Ass’n, Inc. v. Warner Communication Inc., 826 S.W.2d
638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ). Therefore, the limitations period
begins to run as to each payment on the date it is due and not paid. Id. Loan payments
initially ceased in 1991.
      However, in this situation the effect of the modification of the loan agreement and the
resumption of loan payments at a different amount than originally agreed must be considered. 
The agreement was modified. The amount of the monthly payments and the rate of interest
was changed in 1993. Payments under the revised agreement were made until February of
1995. Suit was brought in March of 1997, well within the four year limitations period.
      The effect of these actions was to create a new agreement, binding the parties to a new
contract, from which this cause of action arose when the loan was defaulted upon in March
1995 and ultimately repudiated. The limitations period did not begin to run until that time and
suit was brought within the limitations period of four years.
      That this is the law cannot be disputed. In 1931, the Commission of Appeals summarized
the applicable law as follows:
Where the parties to a promissory note, which is past due but is unbarred by
limitation, and which by its terms bears interest until paid, mutually agree to an
extension of the time of payment of the note to a future date, a new contract, based
upon a new consideration deemed valuable in law, arises between the parties. By
such an agreement, each of the parties becomes obligated to the other in respects not
comprehended by the contract arising from the note. The payee impliedly promises to
surrender his present right to demand immediate payment of the indebtedness
represented by the note, and to forego suit during the extension period; the payor
impliedly promises to pay said indebtedness on the new maturity date, together with
interest up to that date, in any event, at the rate provided in the note. Each of these
new promises constitutes the consideration for the other, and a binding contract,
embodying the terms of the note, as modified by the new agreement, results. Benson
v. Phipps, 87 Tex. 578, 29 S.W. 1061, 47 Am. St. Rep. 128. In such a case, we
understand the rule to be that, despite the fact that said agreement is oral, the existing
right of action, which accrued to the creditor under the note, is relinquished, and that
another right of action for the debt does not accrue to him until the new promise of the
debtor to pay is breached. Limitation does not commence to run against an action to
enforce the debtor's new promise to pay, until the time for performance of the new
promise arrives. Heisch v. Adams, 81 Tex. 94, 16 S.W. 790; Port Arthur Rice Mill
Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W.
884, 152 S.W. 629.
 
The foregoing legal principles are applicable to the present case. The words of
the agreement of January, 1927, were that the "note" was to be "carried another
year." This language clearly imports a purpose to extend the time of payment of the
indebtedness evidenced by the note to January 1, 1928. From this extension
agreement, constituting as it does a new contract binding the respective parties to new
engagements, the cause of action declared on arose. This cause of action has never
become barred by limitation; therefore Article 5539 of the statutes does not apply.

McNeill v. Simpson, 39 S.W.2d 835, 835-836 (Tex. Comm’n. App. 1931, opinion aff’d). See
also Hoarel Sign Co. v. Dominion Equity Corp., 910 S.W.2d 140, 144-145 (Tex.
App.—Amarillo 1995, writ denied).
      Howard’s claim for payment of the debt was not barred by the statute of limitations. 
Suzanne’s first issue is overruled.
CONCLUSION
      Having overruled both issues raised on appeal by Suzanne and Dwight McElwee, the
judgment in favor of James R. Joham, Independent Executor of the Estate of Howard E.
Joham, is affirmed.


                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance and
      Justice Gray
Affirmed
Opinion delivered and filed January 26, 2000
Publish